REVISED JULY 24, 2009

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**United States Court of Appeals
Fifth Circuit**

**F I L E D**

June 24, 2009

Charles R. Fulbruge III
Clerk

No. 08-70003

HUMBERTO LEAL GARCIA

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN; DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, GARZA and BENAVIDES, Circuit Judges.

WIENER, Circuit Judge:

The opinion in this case filed on June 15, 2009, is withdrawn and the following opinion is substituted therefor.

Petitioner Humberto Leal Garcia ("Leal") appeals from the district court's finding that it was without jurisdiction to consider his second petition for habeas corpus relief because Leal failed to first seek authorization from this court pursuant to 28 U.S.C. § 2244. Leal contends that because his petition is not successive within the meaning of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he was not required to obtain authorization and the

district court had jurisdiction to hear his petition. We agree, but we nevertheless affirm the dismissal on the basis of the intervening Supreme Court decision in Medellín v. Texas.[1]

## I. FACTS AND PROCEEDINGS

Leal was convicted of murder in a Texas court in 1995 for killing a 16-year-old girl during the course of an aggravated sexual assault. On a jury's recommendation, Leal was sentenced to death. We assume the parties are well familiar with the facts of the case so we will not repeat them here;[2] it goes without saying that the details of the crime are graphic and brutal.

### A. Procedural History

This is Leal's second attempt at federal habeas relief.[3] AEDPA requires that a petitioner filing a "second or successive" petition first obtain authorization to do so from the appropriate federal appellate court. Leal did not do so, claiming that his petition was not successive. The district court disagreed, holding that it was successive and that, because Leal failed to obtain authorization pursuant to 28 U.S.C. § 2244(b)(3)(A), the court was without jurisdiction to hear the petition. The district court dismissed Leal's petition without prejudice. He now appeals the holding of no jurisdiction.[4]

---

[1] ___ U.S. ___, 128 S. Ct. 1346 (2008).

[2] The details are laid out in, among other places, the district court's Memorandum Opinion and Order denying Leal's prior petition. Leal v. Dretke, No. SA-99-CA-1301, 2004 WL 2603736 (W.D. Tex. Oct. 20, 2004).

[3] His first attempt, attacking his conviction and sentence on a number of bases, was denied in 2004. Id., certif. of appealability denied, 428 F.3d 543 (5th Cir. 2005), cert. denied, 547 U.S. 1073 (2006).

[4] Leal also appeals the second part of the district court's decision, in which it hypothesized that it had jurisdiction and reached the merits of his claim after determining that it was without jurisdiction. The State concedes the district court erred in so doing. The Supreme Court has rejected the use of "hypothetical jurisdiction," and we reject its use here. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94, 118 S. Ct. 1003 (1998) ("We decline to endorse [hypothetical jurisdiction] because it carries the courts beyond the bounds of

To assist in better understanding of this opinion, we set forth the timeline of Leal's proceedings to date and critical events paralleling his petitions for relief:

> March 2000 – Leal files his first federal habeas petition in the District Court for the Western District of Texas.
> March 2004 – The International Court of Justice (the "ICJ") issues the Avena decision.[5]
> October 2004 – The Western District of Texas denies habeas relief to Leal.[6]
> December 2004 – Leal seeks a Certificate of Appealability ("COA") in this court to appeal denial of his first federal habeas petition.
> February 2005 – President Bush signs a declaration ordering state compliance with the mandate of the Avena decision.
> March 2005 – Leal requests that this court stay further proceedings while he returns to state court to litigate his Avena-related claim, which motion we denied without further discussion.
> October 2005 – This court denies Leal's request for a COA.[7]
> November 2006 – Texas Court of Criminal Appeals holds that the Avena decision and the Bush declaration are not binding on the state of Texas.[8]
> March 7, 2007 – Texas Court of Criminal Appeals denies Leal's pending Avena-related state petition.[9]
> March 14, 2007 – Leal files this, his second, federal habeas petition.

---

authorized judicial action and thus offends fundamental principles of separation of powers."); United States v. Tex. Tech Univ., 171 F.3d 279, 286-87 (5th Cir. 1999) ("To rule on a merits question before, or in addition to, answering the omnipresent jurisdictional question would contravene the well-established principle that the federal courts may not issue advisory opinions."). "Without jurisdiction the court cannot proceed at all in any cause." Ex parte McCardle, 73 U.S. 506, 514 (1868).

[5] Case Concerning Avena and Other Mexican Nationals (Mexico v. United States), 2004 I.C.J. 12 (Judgment of Mar. 31, 2004).

[6] Leal v. Dretke, 2004 WL 2603736.

[7] Leal v. Dretke, 428 F.3d 543 (5th Cir. 2005).

[8] Ex parte Medellín, 223 S.W.3d 315, 332, 344 (Tex. Crim. App. 2006).

[9] Ex parte Cardenas, No. WR-41743-02, 2007 WL 678628, at *1 (Tex. Crim. App. Mar. 7, 2007) (citing Ex parte Medellín, 223 S.W.3d 315).

<u>December 2007</u> – The District Court for the Western District of Texas dismisses Leal's petition for lack of jurisdiction.[10]
<u>January 2008</u> – Leal files timely notice of appeal.
<u>March 2008</u> – Supreme Court decides Medellín v. Texas, affirming the Texas Court of Criminal Appeals.[11]

## II. ANALYSIS

### A. Standard of Review

In a petition for habeas corpus, we review de novo the district court's determination that it was without jurisdiction to consider the petitioner's claim.[12]

### B. The Vienna Convention and the Avena Decision

Before delving into the specifics of this case, we must outline the singular international and domestic legal background from which Leal's petition arises. The Vienna Convention, to which the United States has been a signatory since 1969, requires member nations to permit detained foreign nationals access to their consular officers.[13] The United States also signed the Optional Protocol Concerning the Compulsory Settlement of Disputes to the Vienna Convention, which established the ICJ and made its decisions binding on the parties before it.[14]

---

[10] Leal v. Quarterman, No. SA-07-CA-214, 2007 WL 4521519 (W.D. Tex. Dec. 17, 2007).

[11] Medellín v. Texas, ___ U.S. ___, 128 S. Ct. 1346 (2008).

[12] Wadsworth v. Johnson, 235 F.3d 959, 961 (5th Cir. 2000).

[13] Vienna Convention on Consular Relations ("Vienna Convention"), Art. 36, Apr. 24, 1963 [1969], 21 U.S.T. 77.

[14] Optional Protocol Concerning the Compulsory Settlement of Disputes to the Vienna Convention (the "Optional Protocol"), Apr. 24, 1963 [1970] 21 U.S.T. 325. The United States has since given notice of its withdrawal from the Optional Protocol in which it agreed to be bound by ICJ decisions. Letter from Condoleeza Rice, Secretary of State, to Kofi A. Annan, Secretary-General of the United Nations (Mar. 7, 2005).

Alleging that the United States had violated the right to consular access established in Article 36 of the Vienna Convention, Mexico took a dispute to the ICJ for review.[15] The case (the "Avena decision") concerned 51 named Mexican citizens convicted of capital crimes and imprisoned in the United States; Leal was one of the 51 named individuals.[16] In 2004, the ICJ held that the United States had violated the Vienna Convention's guarantee of consular access and must review the convictions and sentences of those individuals whose rights were so violated.[17] In its decision, the ICJ stated that procedural barriers — such as state law procedural default rules — to reviewing the cases of the 51 individuals should be suspended to permit review.[18] To obtain state compliance with the ICJ's edict, President George W. Bush then issued a memorandum (the "Bush declaration") in February 2005, ordering states to review the cases identified in the Avena decision.[19]

---

[15] Case Concerning Avena and Other Mexican Nationals (Mexico v. United States), 2004 I.C.J. 12 (Judgment of Mar. 31, 2004).

[16] Id. ¶ 16.

[17] Id. ¶¶ 90, 106.

[18] Id. ¶ 112.

[19] The Vienna Convention binds the United States as a matter of international law, but does not bind the individual states of the Union unless and until Congress passes enabling legislation enacting its provisions. Sanchez-Llamas v. Oregon, 548 U.S. 331, 346-47, 126 S. Ct. 2669 (2006). Violations of the Vienna Convention's right to consular access is enforceable by one member-nation against another, which is why Mexico took the Avena suit to the ICJ. The Supreme Court has never answered whether the Convention creates rights enforceable by individual residents of the signatory nations. See, e.g., Medellín v. Texas, ___ U.S. ___, 128 S. Ct. 1346, 1357 n.4 (2008) (finding it unnecessary to reach the question, but assuming, without deciding, that the Vienna Convention grants individually enforceable rights); Sanchez-Llamas, 548 U.S. at 343 (same). We have held that "Article 36 of the Vienna Convention does not create an individually enforceable right." Medellín v. Dretke, 371 F.3d 270, 280 (5th Cir. 2004) (citing United States v. Jimenez-Nava, 243 F.3d 192, 198 (5th Cir. 2001)). But numerous other courts have held the opposite, that the Vienna Convention does create an individually enforceable right. See, e.g., Osagiede v. United States, 543 F.3d 399, 409-10 (7th Cir. 2008) (collecting cases).

As a result of this series of events, Leal — like others of the 51 named individuals — filed a petition for habeas corpus under Texas law seeking the review outlined in the Avena decision. After the Texas Court of Criminal Appeals denied his petition, Leal filed his second habeas petition in the Western District of Texas seeking the state of Texas's compliance with the Avena decision and the Bush declaration. A year after Leal filed his second federal petition, the Supreme Court, in Medellín v. Texas, considered the issue of Texas's refusal to conduct a review pursuant to Avena. The Court held that although the ICJ's Avena decision creates an international obligation binding on the United States, (1) the decision cannot automatically create enforceable domestic law,[20] and (2) the President, acting without legislative or constitutional authority, could not pre-empt state law to make it binding.[21] In short, the Court held that the several states are not bound to conduct the review ordered by the ICJ in the Avena decision. The Court then affirmed the Texas Court of Criminal Appeals's rejection of Medellín's successive habeas petition as an abuse of the writ under state law.[22]

The claim on which Leal's federal petition is based has been foreclosed by the Supreme Court's decision in Medellín v. Texas.[23] We proceed with our analysis, however, because the issue before us is whether the district court

---

[20] Medellín v. Texas, 128 S. Ct. at 1367.

[21] Id. at 1371-72.

[22] Id. at 1353. The Texas court had rejected Medellín's petition finding it was procedurally barred and that neither Avena nor the President's memorandum worked to remove that procedural bar. Ex parte Medellín, 223 S.W.3d 315, 321 (Tex. Crim. App. 2006) (violation of Medellín's Vienna Convention right was previously available factual or legal basis that could have been raised in prior petition). On the basis of Ex parte Medellín, the Texas Court of Criminal Appeals dismissed Leal's state petition. Ex parte Cardenas, No. WR-41743-02, 2007 WL 678628, at *1 (Tex. Crim. App. Mar. 7, 2007).

[23] Medellín v. Texas, 128 S. Ct. at 1367, 1371-72; see also In re Fierro, 281 F. App'x 264 (5th Cir. 2008); Gomez v. Quarterman, 529 F.3d 322 (5th Cir. 2008).

properly determined that it was without jurisdiction, a question not mooted by the Supreme Court's decision in Medellín.

## C. Applicability of § 2244 to Leal's Petition

AEDPA requires a prisoner to obtain authorization from the federal appellate court in his circuit before he may file a "second or successive" petition for relief in federal district court.[24] Without such authorization, the otherwise-cognizant district court has no jurisdiction to entertain a successive § 2254 petition.[25] Leal asserts, however, that his petition is not successive because it is based on a claim that was not available to him at the time of his prior petition. If he is correct, the stringent requirements of § 2244 for obtaining authorization would not apply.[26]

Leal filed his first federal habeas petition in 2000, long before the Avena decision and the Bush declaration. In March 2004, when the ICJ decided Avena, Leal's first petition was still pending; the District Court for the Western District of Texas did not deny him relief until seven months later. The State asserts that this gap between the Avena decision and the district court's denial afforded Leal

---

[24] 28 U.S.C. § 2244(b)(3). The standards for obtaining authorization to file a successive petition are demanding. See, e.g., Burton v. Stewart, 549 U.S. 147, 152, 127 S. Ct. 793 (2007).

[25] 28 U.S.C. § 2244(b)(3)(A); see also Burton v. Stewart, 549 U.S. at 153; United States v. Key, 205 F.3d 773, 774 (5th Cir. 2000).

[26] Since Medellín v. Texas was decided, we have considered two other Avena-related cases. Neither provides much guidance on the second-or-successive question presented here. In Gomez v. Quarterman, we considered the petitioner's request for a Certificate of Appealability pursuant to 28 U.S.C. § 2253 on appeal from denial of his first habeas petition in which he had contended that his Vienna Convention rights had been violated. 529 F.3d at 324, 326. We rejected Gomez's petition on the basis of Sanchez-Llamas and Medellín v. Texas. Id. at 329-30 (citing Medellín v. Texas, 128 S. Ct. at 1357, 1367-72 and Sanchez-Llamas v. Oregon, 548 U.S. 331, 360, 126 S. Ct. 2669, 2687 (2006)). In In re Fierro, petitioner sought authorization from this court to file what would have been his third federal habeas petition. 281 F. App'x at 265. We stayed that request while petitioner sought relief from the Texas courts, during which stay the Supreme Court decided Medellín. As a result of the Court's decision, we denied Fierro's pending request for authorization. Id. at 265-66.

the opportunity and ample time to amend his first petition to include the claim on which he now bases this later petition. As such, according to the State, Leal's Avena-based claim was previously available and required, but did not merit, authorization from this court.

Leal counters that his claim did not arise until (1) the Bush declaration attempted to make the Avena decision binding on the states and (2) the Texas courts refused to afford review.[27] As a result, he insists, the claim on which this petition is based was not previously available to him and so, although it is numerically second, it is not "second or successive" within the meaning of AEDPA.

1. Second or Successive Petition

AEDPA was enacted in part to bring finality to state court judgments.[28] Section 2244 lays out the requirements for filing successive petitions, serving as gate-keeper by preventing the repeated filing of habeas petitions that attack the prisoner's underlying conviction.[29] The statute does not define "second or successive,"[30] however, and we have made clear that a petition is not "second or successive" merely because it is numerically second.[31] In In re Cain, we defined a "second or successive" petition as one that "1) raises a claim challenging the

---

[27] To be clear, Leal's argument is not that his right to consular access was violated although it is from this Vienna Convention right that his claim ultimately derives. Rather, it is that the Avena decision via the Bush declaration entitle him to review.

[28] Williams v. Taylor, 529 U.S. 420, 436, 120 S. Ct. 1479 (2000).

[29] Felker v. Turpin, 518 U.S. 651, 664, 116 S. Ct. 2333 (1996).

[30] Hardemon v. Quarterman, 516 F.3d 272, 275 (5th Cir. 2008). The Supreme Court among others have noted that AEDPA is not a marvel of legislative drafting. See, e.g., Lindh v. Murphy, 521 U.S. 320, 336, 117 S. Ct. 2059 (1997) ("All we can say is that in a world of silk purses and pigs' ears, [AEDPA] is not a silk purse of the art of statutory drafting.").

[31] See, e.g., United States v. Orozco-Ramirez, 211 F.3d 862, 867 (5th Cir. 2000) (quoting In re Cain, 137 F.3d 234, 235 (5th Cir. 1998)) (finding Cain consistent with Stewart v. Martinez-Villareal, 523 U.S. 637 (1998)).

petitioner's conviction or sentence that was or could have been raised in an earlier petition; or 2) otherwise constitutes an abuse of the writ."[32] Section 2244 specifies when a later-in-time petition will be heard. Despite its strictures, the case law clarifies that there is a category of petitions that, even though later in time, are outside the confines of § 2244 and will be heard because they are not "second or successive" within the meaning of AEDPA.[33]

Leal relies on the Cain definition to assert that his petition falls into the exceptional category — that is, it is non-successive — because it is based on a claim unavailable to him at the time of his first habeas petition. According to Leal, Cain's sole requirement for a permissible non-successive petition is that the claim on which it was based had been unavailable at the time of a first petition. We agree with Leal that his petition is non-successive, but we cannot embrace the full scope of the rule he advocates. Broadly understood, such an expansive interpretation of Cain would run foul of the plain language of AEDPA and be incorrect. We must therefore consider the contours of Cain.

2. Statutory and Jurisprudential Context

Cain cannot be read in isolation, but must be considered in the context of AEDPA, the statute that it interprets.[34] The Cain definition of "successive" is

---

[32] In re Cain, 137 F.3d at 235. "The core of AEDPA restrictions on second or successive § 2255 petitions is related to the longstanding judicial and statutory restrictions embodied in the form of res judicata known as the 'abuse of the writ' doctrine." Orozco-Ramirez, 211 F.3d at 868 (quoting United States v. Barrett, 178 F.3d 34, 44 (1st Cir. 1999)). Orozco-Ramirez read § 2254 claims in pari materia with those under § 2255. Id. at 864 n.4.

[33] Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 2853 (2007); Slack v. McDaniel, 529 U.S. 473, 478, 120 S. Ct. 1595 (2000); Orozco-Ramirez, 211 F.3d at 867; In re Cain, 137 F.3d at 235.

[34] AEDPA reads, in relevant part:

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

broadly worded while AEDPA's treatment of "successive" is narrow; and herein lies the logical flaw in Leal's broadly stated understanding of Cain and the reason why we cannot simply apply Cain without further consideration. To read Cain as does Leal would require us to hold that a petition is non-successive if it rests on a rule of constitutional law decided after the petitioner's first habeas proceeding because such a claim would not have been previously available. But § 2244(b) prohibits such a result. Newly available claims based on new rules of constitutional law (made retroactive by the Supreme Court) are successive under § 2244(b)(2)(A): Indeed, this is the reason why authorization is needed to obtain review of a successive petition. Leal's view of Cain would permit an end-run around § 2244. The new rule of constitutional law would be non-successive because it was previously unavailable, so no authorization would be required. Were Leal correct, § 2244(b)(2) would be rendered surplusage.[35]

---

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless–
>> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>>
>> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244.

[35] The Seventh Circuit recognized this difficulty in In re Page, noting that § 2244(b) forecloses the argument that constitutional claims are not successive merely because they were not available at the time a first petition was filed. 170 F.3d 659, 661-62 (7th Cir. 1999); see also In re Page, 179 F.3d 1024, 1026 (7th Cir. 1999) ("amplifying" first Page opinion). The court held that a second petition attacking the prisoner's original judgment, the same judgment attacked by his first habeas petition, was successive within the meaning of AEDPA even though it was

A second petition based on newly discovered evidence presents a similar, although less pristine, example of the problem created by Leal's proffered interpretation. Leal's view of Cain would permit petitioners filing later habeas petitions to assert that, because the evidence was not previously discovered or discoverable, the claim was unavailable; therefore, the later petition is non-successive. Again, AEDPA forbids such a reading: Section 2244(b)(2)(B)(i) states that claims based on a factual predicate not previously discoverable are successive.

Cain itself is not so broad as Leal contends; his argument ignores the context in which the decision's definition of "successive" was provided. In Cain, we contrasted permissible successive petitions with those in which prisoners "repeatedly [attack] the validity of their convictions and sentences."[36] It is these repeated attacks, which often take on new forms as the legal landscape shifts, that are the evil against which AEDPA is directed and the counterpoint to the rule laid out in Cain.[37]

If AEDPA is aimed at minimizing repeated attacks on an underlying judgment and, to that end, permits "second or successive" petitions to be heard only via § 2244, then the small subset of permissible non-successive petitions must fit within these boundaries. When we look to the jurisprudence we find that contrasting petitions typically deemed non-successive with those typically deemed successive illuminates this middle ground. Later habeas petitions attacking the same judgment that was attacked in a prior petition tend to be labeled successive and must meet the standards for authorization under §

---

based on a case decided after the first habeas petition was denied. In re Page, 170 F.3d at 661-62.

[36] In re Cain, 137 F.3d at 235.

[37] Id. at 235, 236 n.1.

2244.[38]   In contrast, later habeas petitions attacking distinct judgments,[39] administration of an inmate's sentence,[40] a defective habeas proceeding itself,[41] or some other species of legal error — when the error arises after the underlying conviction[42] — tend to be deemed non-successive.[43]  In essence,  if the purported defect existed, or the claim was ripe, at the time of the prior petition, the later petition is likely to be held successive even if the legal basis for the attack was not.  If, however, the purported defect did not arise, or the claim did not ripen,

---

[38] See, e.g., Panetti,127 S. Ct. at 2855 ("In the usual case, a petition filed second in time and not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar."); Burton v. Stewart, 549 U.S. 147, 153, 127 S. Ct. 793 (2007) (petitioner's second application was successive because he "twice brought claims contesting the same custody imposed by the same judgment"); Hardemon v. Quarterman, 516 F.3d 272, 276 (5th Cir. 2008).  The treatment given to unexhausted or unripe claims is not an exception to this rule, rather it is aligned with it.  Stewart v. Martinez-Villareal, 523 U.S. 637, 643-44, 118 S. Ct. 1618 (1998) (finding that petitioner's later, now-ripe Ford-based petition was continuation of previously filed claim, not a separate claim (considering Ford v. Wainwright, 477 U.S. 399, 106 S. Ct. 2595 (1986) (Eighth Amendment bars execution of an insane person))); see also Panetti, 127 S. Ct. at 2854-55 (requiring petitioners to raise unripe claims prior to ripening to ensure habeas review tends to contravene the principles of "comity, finality, and federalism" motivating AEDPA); Slack v. McDaniel, 529 U.S. at 487-88; Orozco-Ramirez, 211 F.3d at 868.

[39] Hardemon, 516 F.3d at 273.

[40] Crone v. Cockrell, 324 F.3d 833, 837 (5th Cir. 2003) (noting that attack on administration of a sentence may be a non-successive petition, but denying relief in the case at bar because the factual basis existed at the time of the first petition (relying on In re Cain, 137 F.3d at 235-36)).

[41] Ochoa Canales v. Quarterman, 507 F.3d 884, 887 (5th Cir. 2007) (Rule 60(b) motion attacking "only a defect in the integrity of the federal habeas proceedings should not be treated as a successive habeas application" (citing Gonzalez v. Crosby, 545 U.S. 524, 532 (2005))).

[42] Orozco-Ramirez, 211 F.3d at 869 (claim relating to counsel's performance on out-of-time appeal, which accrued after denial of first habeas petition, could not have been raised in first appeal and thus was non-successive, but ineffective-assistance-of-counsel claim arising from trial counsel's performance was successive).

[43] In Crone, for example, the court recognized that the petitioner's claim did not attack his underlying conviction, but was denied relief because the factual basis for the new claim had been previously available. 324 F.3d at 837.

until after the conclusion of the previous petition, the later petition based on that defect may be non-successive.

We need look no farther than Cain itself for illustration. We held that Cain's petition was non-successive because it attacked the administration of his sentence, not his underlying conviction. Cain contended that the prison board had deprived him of his good-time credit without due process of law.[44] The complained-of disciplinary proceeding by the prison board did not occur until after proceedings in Cain's first habeas petition concluded.[45] We noted that not only could Cain's challenge to those proceedings not have been included in his first habeas petition, but that the challenge was essentially independent of Cain's underlying conviction.[46] As Cain illustrates, we may deem a later petition based on a newly available claim non-successive and outside the confines of § 2244 if the defect that it attacks did not arise until after the prior habeas proceeding.

With the framework within which we determine whether a petition is successive or non-successive thus established, we now consider whether Leal's second petition was successive or non-successive when filed in March 2007.

3. Application

The State claims that Leal could have amended his prior federal petition to include the Avena-based claim once the ICJ's judgment was rendered in March 2004. At that point, Leal's first petition had been pending for four years. There may be room for debate as to whether, while a petitioner is this far along in his initial petition and awaiting a decision, he should be required to add a

---

[44] In re Cain, 137 F.3d at 236.

[45] Id. at 235.

[46] Id. at 236 ("Indeed, even if his claims are found to be meritorious and his good-time credits are restored, Cain will continue to serve his sentence as it was imposed by the trial court.").

freshly minted claim to it, but we are satisfied that in this case the State's argument misses the mark.[47] Remember, Leal does not contend that Avena was immediately enforceable on the states;[48] he claims that it was the Bush declaration implementing the Avena decision and Texas's refusal to comply with the presidential order that has denied him rightful review — and he filed his second federal petition one week after the Texas Court of Criminal Appeals denied him relief.[49] As the Bush declaration was not issued until after Leal's first petition was denied,[50] the basis for his claim — Texas's refusal to conduct the review of his conviction — did not occur until well after proceedings on his first petition had concluded.

As we have explained, when determining whether a later petition is non-successive, we consider the defect that the later petition attacks and when that defect arose. Here, Leal does not rely on some novel legal basis to again attack

---

[47] We note, however, that other courts have considered the fact that a new claim arose during the pendency of a petitioner's first petition relevant, but not determinative, of whether his later habeas petition was successive. See, e.g., Hines v. United States, 282 F.3d 1002, 1004 (8th Cir. 2002) (failure to amend pending first petition when new constitutional claim arose was relevant to whether second petition was successive); In re Hill, 113 F.3d 181, 183 (11th Cir. 1997) (eschewing reliance on "mechanistic test when assessing availability" and finding that petitioner may be required to "demonstrate infeasibility" of amending pending habeas petition where new claim arose seven months after second petition filed and three and a half years before decided); Felker v. Turpin, 83 F.3d 1303, 1306 (11th Cir. 1996), cert. granted by 517 U.S. 1182 (1996) and later dismissed by 518 U.S. 651 (1996) (new claim that arose the day before prior petition was filed could have been included initially or via amendment, so it was previously available and relief was denied); Reed v. Quarterman, No. 3-06-CV-1113, 2006 WL 3690389, at *3 (N.D. Tex. Dec. 13, 2006) (failure to amend pending first habeas petition to include new claim constituted "piecemealing").

[48] Leal's petition and appeal to this court were both filed before the Supreme Court issued Medellín v. Texas, so while the argument is moot now, it was not at the time the district court determined whether it had jurisdiction to hear Leal's petition.

[49] We stress that the Avena decision specifically instructed Texas to review Leal's case, he was one of 51 individuals expressly identified by the ICJ.

[50] The Bush declaration was issued while Leal's first petition was pending on appeal and therefore too late for Leal to amend that petition. And, we denied Leal's motion to stay and abate the proceedings so that he could return to state court to exhaust the claim.

his conviction, an undertaking we would likely deem successive. Rather, he alleges a defect that arose, he insists, after his conviction.[51] Although the ultimate goal of Leal's petition is to obtain court review of his conviction, he is actually attacking the State's failure to comply with the Avena decision as implemented by the Bush declaration. And, we will not require courts to divine a petitioner's underlying ulterior motives. Texas did not deny Leal's claim based on Avena and the Bush declaration until March 2007, well after the resolution of Leal's first habeas petition. As a result, the Avena/Bush declaration claim was not previously available to him, making Leal's petition non-successive.

4. The Effect of Medellín v. Texas

As it was non-successive, Leal's second habeas petition did not require authorization, so it follows that the district court did have jurisdiction. The legal ground has shifted once again, however, and although the district court was incorrect in finding that it was without jurisdiction, Leal will get no further. In the unusual posture of this case, Leal once had a newly available claim, but no longer has it. As we have said, Leal's petition attacked Texas's refusal to comply with Avena and the Bush declaration, but that refusal can no longer serve as the basis for a petition for habeas corpus. The Supreme Court's decision in Medellín v. Texas, has deprived the Avena decision and the Bush declaration of whatever legal force Leal might claim they ever had.[52] Leal cannot now argue that Texas was required to review his case because Medellín v. Texas foreclosed this

---

[51] This is a critical fact in this case. Were Leal's second petition seeking review of his conviction grounded solely on the failure to provide him consular access, his claim would be successive and forced under the ambit of § 2244 where it would surely fail to merit authorization.

[52] ___ U.S. ___, 128 S. Ct. 1346, 1360, 1372 (2008).

contention by holding that neither the ICJ nor President Bush had authority to order the State to conduct such a review.[53]

## III. CONCLUSION

Leal's second habeas petition was non-successive, so it did not require authorization from us to be considered by the district court. Therefore, we reverse the district court's holding that it lacked jurisdiction to consider Leal's petition. That said, however, for the reasons last stated, we affirm the dismissal of his habeas petition, albeit with prejudice.[54] We also vacate the district court's determination based on its erroneous assumption of hypothetical jurisdiction. AFFIRMED in part; VACATED in part.

---

[53] In re Fierro, 281 F. App'x 264 (5th Cir. 2008); Gomez v. Quarterman, 529 F.3d 322 (5th Cir. 2008).

[54] Leal contends that Congress will pass legislation requiring state compliance with the Avena decision. Such a law, or a State's refusal to comply with such a law, might provide a previously unavailable basis for a petition for habeas corpus, so our denial of Leal's instant petition with prejudice will not be an impediment to his filing yet another such petition, as it would not be successive either.