**James Allen MARTIN, Petitioner,**

v.

**Dennis BENSON, Respondent.**

Civil No. 11–347 (DSD/JJK).

United States District Court,
D. Minnesota.

Sept. 30, 2011.

James Allen Martin, Moose Lake, MN, Petitioner, pro se.

Steven H. Alpert, Esq., and Matthew Frank, Esq., Assistant Attorneys General, for Respondent.

## MEMORANDUM AND ORDER

JEFFREY J. KEYES, United States Magistrate Judge.

### INTRODUCTION

The above-named Petitioner, James Allen Martin, is a civilly-committed detainee at the Minnesota Sex Offender Program ("MSOP"), in Moose Lake, Minnesota. He commenced this action by filing a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) The matter has been referred to this Court pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

Shortly after this action was commenced, this Court examined Petitioner's habeas corpus Petition, as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. At that time, this Court learned that Petitioner had already challenged the state court judgment that caused his civil commitment in a previous § 2254 habeas corpus action in this District—*Martin v. Mooney,* Civil No. 06–1605 (DSD/RLE) (hereinafter *"Martin-'06"*). In addition, this Court learned that Petitioner's previous habeas corpus petition was dismissed on the merits and with prejudice, and Petitioner's subsequent appeal in the case was dismissed by the Eighth Circuit Court of Appeals.

Given the outcome of *Martin-'06,* this Court was concerned that Petitioner's present habeas corpus might constitute a "second or successive petition" for purposes of 28 U.S.C. § 2244(b). The Court was further concerned that if the current Petition is indeed a second or successive petition it would have to be summarily dismissed for lack of jurisdiction, because it was not accompanied by a pre-authorization order from the Eighth Circuit Court of Appeals as required by § 2244(b)(3). *See Burton v. Stewart,* 549 U.S. 147, 157, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007) (stating that where the habeas petitioner "neither sought nor received authorization from the Court of Appeals before filing his ... 'second or successive' petition challenging his custody ... the District Court was without jurisdiction to entertain it").

Because of this Court's jurisdictional concerns, Respondent was directed to file a response to Petitioner's habeas corpus Petition addressing only the issue of whether the Petition constitutes a second or successive petition for purposes of § 2244(b). (*See* Doc. No. 4, 2/14/11 Order.) Respondent has filed the required response (Doc. Nos.7, 8), and contends therein that the current Petition is indeed a second or successive petition that must be summarily dismissed for lack of jurisdiction. Petitioner has filed a reply memorandum (Doc. No. 10), contending that his current Petition is not a second or successive petition, and that this action should not be summarily dismissed for lack of jurisdiction.

For the reasons discussed below, this Court finds that the current Petition is not a second or successive petition, and it can properly be entertained without a pre-authorization order from the Court of Appeals. Therefore, this Court orders Respondent to file a new response that addresses Petitioner's current habeas corpus Petition on the merits.

### BACKGROUND

In 2004, the state district court for Anoka County, Minnesota, found Petitioner to be a "Sexually Dangerous Person" ("SDP"), under Minnesota law. *See* Minn. Stat. § 253B.02, subd. 18c. He was civilly committed for an indefinite term, and he was assigned to MSOP for confinement and treatment.

Petitioner challenged his civil commitment by filing a direct appeal with the

Minnesota Court of Appeals. His appeal raised several federal constitutional challenges to his commitment proceedings, but all of his claims were rejected, and his commitment order was affirmed. *In re Civil Commitment of Martin,* No. A04–1634, 2005 WL 354088, at *1–5 (Minn.Ct. App. Feb. 15, 2005), *rev. denied,* (April 19, 2005).[1]

After Petitioner's commitment was affirmed on direct review, he filed his first federal habeas corpus action, *Martin '06.* In that case, Petitioner renewed the federal constitutional challenges that he had raised in his direct appeal. The matter was assigned to Chief Magistrate Judge Raymond L. Erickson (who is now retired) for a Report and Recommendation. Magistrate Judge Erickson identified seven grounds for relief presented in *Martin '06,* which Petitioner has described as follows: "1) Application of SDP Act to Non–Sex Offenders; 2) Appellate Court's Determination of Control Issue; 3) Need for Specific Finding of Inadequate Control; 4) Right to Jury Trial; 5) Equal Protection—Incarceration for Thoughts; 6) Equal Protection—Standard of Review; and 7) Equal Protection—Evaluation and Treatment." (Doc. No. 10, Pet'r's Reply Mem. 3.) Magistrate Judge Erickson found all of Petitioner's claims in *Martin '06* to be meritless, and he recommended that Petitioner's habeas corpus petition be dismissed with prejudice.[2] That recommendation was adopted by District Court Judge David S. Doty on May 3, 2007, and

*Martin '06* was thereby dismissed. *Martin v. Mooney,* Civil No. 06–1605 (DSD/RLE), 2007 WL 1306409 (D.Minn. 2007). Petitioner attempted to pursue an appeal, but he was denied a Certificate of Appealability by both the District Court Judge, and the Eighth Circuit Court of Appeals. *See Martin '06,* Civil No. 06–1605 (DSD/RLE), (Doc. Nos. 25, 26, 27 and 33). And the United States Supreme Court denied Petitioner's subsequent petition for a writ of certiorari on June 2, 2008. *Martin v. Mooney,* 553 U.S. 1082, 128 S.Ct. 2878, 171 L.Ed.2d 817 (2008).

In 2009, Petitioner filed a state habeas corpus petition in the state district court for Carlton County, Minnesota. That petition raised several new challenges to Petitioner's still ongoing civil commitment at MSOP. Petitioner contended that as result of two amendments to Minnesota law, and concomitant changes in various policies and practices at MSOP, his continuing commitment at MSOP had become unconstitutional. (The statutory amendments and policy/practice changes at issue are discussed more fully below.)

The state district court denied Petitioner's state habeas corpus petition, and he appealed that ruling. The Minnesota Court of Appeals addressed Petitioner's new constitutional challenges to his continuing civil commitment and found them to be without merit. *Martin v. Benson,* No. A10–657, 2010 WL 3744760 (Minn.Ct. App.2010). On December 14, 2010, the Minnesota Supreme Court denied Petition-

1. The state district court initially determined that Petitioner should not be civilly committed, but that ruling was overturned in an earlier decision by the Minnesota Court of Appeals. *See In re Civil Commitment of Martin,* 661 N.W.2d 632 (Minn.Ct.App.2003), *rev. denied,* (Aug. 5, 2003). That earlier decision recites the factual grounds for the commitment proceedings, which are very frightening. Although it appears that Petitioner has never been convicted of criminal sexual conduct

under Minnesota law, he has stalked, and evidently plotted to rape and kill, at least two women. *See id.* at 634–36.

2. A copy of Magistrate Judge Erickson's Report and Recommendation in *Martin '06* is included in the current record in Respondent's Appendix. (Doc. No. 8, Aff. Of Steven H. Alpert ¶2, Attach. 4 at RA129–RA179.)

er's application for further review. (*Id.*) Petitioner then filed his current federal habeas corpus Petition on February 11, 2011. (Doc. No. 1.)

## CLAIMS PRESENTED

The current Petition lists three grounds for relief. Petitioner first contends that "[a] legislative amendment to Minn.Stat. § 253B.185 has caused the conditions of confinement in the Minnesota Sex Offender Program to become punitive," and as a result, his continuing confinement violates the constitutional prohibition against double jeopardy. (Doc. No. 1, Pet. § 12.A.) The apposite amendment to § 253B.185 authorized state officials to implement new policies at MSOP, which would limit the freedoms and privileges afforded to MSOP patients. Acting pursuant to the amended statute, MSOP officials allegedly have implemented several new policies that have resulted in harsher living conditions for MSOP patients. Petitioner contends that the living conditions at MSOP have now become indistinguishable from prison conditions. He describes the current conditions at MSOP as "punitive." Thus, according to Petitioner, he is now being "punished" for a second time for old crimes, in violation of the double jeopardy clause.

Petitioner's second ground for relief is similar to the first. He claims that the new and harsher conditions at MSOP, which are the result of new policies adopted pursuant to the amendment to § 253B.185, amount to "punishment." He further claims that this new "punishment" was imposed without first affording him the procedural protections of due process. Petitioner is seeking a writ of habeas corpus that would release him from MSOP because he is being punished without due process in violation of the Fourteenth Amendment.

The third claim listed in the current Petition, which is labeled as another due process claim, is somewhat difficult to decipher. Petitioner has summarized this claim as follows:

> A legislative amendment to Minn.Stat. § 246B.01, in combination with the State's record of having never released a detainee from the Sex Offender Program, results in the duration of Program confinement not being reasonably related to the purpose for which persons are civilly committed.

(Pet. § 12.C.) Petitioner's memorandum in support of his Petition sheds a little more light on this claim—but not much. The memorandum indicates that Petitioner's claim is based on subdivision 2a of Minn.Stat. § 246B.01, which provides that—

> Community preparation services are specialized residential services or programs operated or administered by the Minnesota sex offender program outside of a secure treatment facility. Community preparation services are designed to assist civilly committed sex offenders in developing the appropriate skills and resources necessary for an eventual successful reintegration into a community. A civilly committed sex offender may be placed in community preparation services only upon an order of the judicial appeal panel under section 253B.19.

Petitioner contends that this statute "create[s] a further statutory barrier to any possible release from the MSOP." (Doc. No. 2, Pet'r's Mem. of Law 20–21.) For reasons not explained, Petitioner believes that the establishment of new "community preparation services" somehow "provides the clearest proof that the duration of confinement in the Program is not reasonably related to the purpose for which persons are civilly committed." (*Id.* at 21.)

## DISCUSSION

██ As discussed above, Petitioner has already sought federal habeas corpus review of his confinement at MSOP once before. His previous federal habeas petition was dismissed on the merits, and with prejudice, in *Martin '06*. Because Petitioner is once again challenging his confinement at MSOP, this Court has obvious reason to be concerned that the present action constitutes a "second or successive petition" that is subject to the restrictions imposed by 28 U.S.C. § 2244(b).

Section 2244(b), which was enacted as part of the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), provides as follows:

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) **Before a second or successive application permitted by this section is filed in the district court, the appli-cant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.**

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three judge panel of the court of appeals.

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

(D) The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion.

(E) The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.

(4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

28 U.S.C. § 2244(b) (emphasis added).

██ This statute plainly states that a federal district court cannot entertain a "second or successive" habeas corpus petition filed by a person in state custody, unless the apposite federal circuit court of appeals has expressly authorized that person to file another habeas petition. *Burton*, 549 U.S. at 157, 127 S.Ct. 793; *see also Cox v. Norris*, 167 F.3d 1211, 1212 (8th Cir.1999) (stating that a prisoner must receive pre-authorization from the Court of Appeals in order for a district court to consider a second or successive application

for habeas corpus relief). If a state detainee attempts to file a second or successive habeas petition without a preauthorization order from the Court of Appeals, the action must be summarily dismissed for lack of jurisdiction. *See Tompkins v. Sec'y, Dept. of Corr.,* 557 F.3d 1257, 1259 (11th Cir.) ("Section 2244(b)(3)(A) requires a district court to dismiss for lack of jurisdiction a second or successive petition for a writ of habeas corpus unless the petitioner has obtained an order authorizing the district court to consider it."), *cert. denied,* 555 U.S. 1161, 129 S.Ct. 1305, 173 L.Ed.2d 482 (2009). It is therefore clear that if Petitioner's current habeas corpus Petition is indeed a second or successive petition, the claims presented in the Petition cannot be adjudicated on the merits, and this action must be summarily dismissed for lack of jurisdiction.

■ However, even though Petitioner is presently challenging his confinement at MSOP for the second time—the first time being *Martin '06*—it does not automatically follow that the present petition actually is a second or successive petition for purposes of § 2244(b). The United States Supreme Court has repeatedly held that the statutory phrase "second or second habeas corpus application under section 2254" is a term of art that "is not self-defining." *Panetti v. Quarterman,* 551 U.S. 930, 943, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007); *see also Slack v. McDaniel,* 529 U.S. 473, 486, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) ("The phrase 'second or successive petition' is a term of art given substance in our prior habeas corpus cases"); *Magwood v. Patterson,* —— U.S. ——, 130 S.Ct. 2788, 2797, 177 L.Ed.2d 592 (2010) (same). The Supreme Court has further held that a state detainee is not necessarily barred from seeking federal habeas review of his confinement simply because he already filed a federal habeas

petition once before. *See Panetti,* 551 U.S. at 944, 127 S.Ct. 2842 ("The Court has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time."). Thus, for example, if a first § 2254 petition is dismissed without prejudice because the petitioner failed to exhaust his state court remedies as required by § 2254(b), a later post-exhaustion petition is not considered to be "second or successive" for purposes of § 2244(b). *Slack,* 529 U.S. at 487, 120 S.Ct. 1595.

The Eighth Circuit Court of Appeals has held that "a habeas petition raising a claim that had not arisen at the time of a previous petition is not barred by § 2244(b) [as a second or successive petition] or as an abuse of the writ." *Singleton v. Norris,* 319 F.3d 1018, 1023 (8th Cir.), *cert. denied,* 540 U.S. 832, 124 S.Ct. 74, 157 L.Ed.2d 59 (2003) (citing *In re Cain,* 137 F.3d 234, 236–37 (5th Cir.1998)). This ruling certainly is relevant to the issue presently before the Court—i.e., whether Petitioner's current Petition is a second or successive petition that requires a preauthorization order. However, the ruling in *Singleton* is broadly stated, and it is therefore readily susceptible to misconstruction or misinterpretation.

■ The court's ruling in *Singleton* cannot mean that a state detainee can repetitively file new § 2254 habeas petitions, without the need for pre-authorization from the Court of Appeals, as long as each new petition raises some new claim that was not previously available. A habeas petitioner cannot avoid the restrictions against "second or successive" petitions, merely by showing that his claims are based on some new law or legal ruling, or some new factual circumstances, which did not exist when he filed a previous habeas petition. If new law or new facts alone would cause a petition to not be a second

or successive petition, then the pre-authorization requirement of § 2244(b)(3) would be meaningless. No petitioner would ever have to show that he should be granted a pre-authorization order because his new claims are based on (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or (2) a "factual predicate ... [that] could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2244(b)(2). If a petitioner's claims were based on any previously unavailable law or facts, he would not have to satisfy either of the specific requirements of § 2244(b)(2), because his petition would not be second or successive petition requiring a pre-authorization order. In short, a broad interpretation of the *Singleton* ruling would effectively nullify the pre-authorization requirement prescribed by § 2244(b)(2) and (3).

The legal conundrum implicated by a broad interpretation of the *Singleton* ruling was discussed in two recent cases from the Eleventh and Fifth Circuits—*Stewart v. United States,* 646 F.3d 856 (11th Cir. 2011), and *Leal Garcia v. Quarterman,* 573 F.3d 214 (5th Cir.2009). In Stewart, the court pointed out that if the Eighth Circuit's ruling in Singleton were adopted "too broadly," it would "threaten Congress's clear intention to limit 'second or successive' attempts at post-conviction relief." 646 F.3d at 860. Recognizing that the *Singleton* rule could easily be misconstrued, the Eleventh Circuit considered "the difficult task of distinguishing between those previously unavailable claims that Congress contemplated in AEDPA's gatekeeping provisions and those that cannot reasonably be deemed 'successive.'" *Id.* In other words: Which new claims that

are based on new facts or law are second or successive (and therefore require a pre-authorization order), and which new claims based on new facts or law are not properly classified as second or successive? The Eleventh Circuit found that this issue had been carefully analyzed by the Fifth Circuit in *Leal Garcia.*

In *Leal Garcia,* a § 2254 habeas petitioner identified as "Leal" argued that he should be allowed to bring a new habeas petition, even though he had already challenged his state criminal conviction in a previous federal habeas action, because his new petition was based on a new legal rule that did not exist when he filed his first petition. Citing an earlier Fifth Circuit decision, *In re Cain,* 137 F.3d at 236–37, Leal contended that he did not need pre-authorization to file his new habeas petition, because his claims were based on new law.[3] The Fifth Circuit explained Leal's argument this way:

> Leal relies on the *Cain* definition [of a second or successive petition] to assert that his petition falls into the exceptional category—that is, it is non-successive—because it is based on a claim unavailable to him at the time of his first habeas petition. According to Leal, *Cain's* sole requirement for a permissible non-successive petition is that the claim on which it was based had been unavailable at the time of a first petition. We agree with Leal that his petition is non-successive, but we cannot embrace the full scope of the rule he advocates. Broadly understood, such an expansive interpretation of *Cain* would run foul of the plain language of AEDPA and be incorrect.

*Leal Garcia,* 573 F.3d at 220. The Court of Appeals then explained why Leal's argument was flawed:

---

3. The Eighth Circuit relied on *In re Cain* to support its ruling in *Singleton. See supra, p.*

11–12. The rulings in *Cain* and *Singleton* are essentially synonymous.

*Cain* cannot be read in isolation, but must be considered in the context of AEDPA, the statute that it interprets.[  ] The *Cain* definition of "successive" is broadly worded while AEDPA's treatment of "successive" is narrow; and herein lies the logical flaw in Leal's broadly stated understanding of *Cain* and the reason why we cannot simply apply *Cain* without further consideration. To read *Cain* as does Leal would require us to hold that a petition is non-successive if it rests on a rule of constitutional law decided after the petitioner's first habeas proceeding because such a claim would not have been previously available. But § 2244(b) prohibits such a result. Newly available claims based on new rules of constitutional law (made retroactive by the Supreme Court) are successive under § 2244(b)(2)(A): Indeed, this is the reason why authorization is needed to obtain review of a successive petition. Leal's view of *Cain* would permit an end-run around § 2244. The new rule of constitutional law would be non-successive because it was previously unavailable, so no authorization would be required. Were Leal correct, § 2244(b)(2) would be rendered surplusage.[ ]

*Id.* at 221 (footnotes omitted). The Court of Appeals' analysis of Leal's argument continued as follows:

A second petition based on newly discovered *evidence* presents a similar, although less pristine, example of the problem created by Leal's proffered interpretation. Leal's view of *Cain* would permit petitioners filing later habeas petitions to assert that, because the evidence was not previously discovered or discoverable, the claim was unavailable; therefore, the later petition is non-successive. Again, AEDPA forbids such a reading: Section 2244(b)(2)(B)(i) states that claims based on a *factual* predicate not previously discoverable are successive.

*Cain* itself is not so broad as Leal contends; his argument ignores the context in which the decision's definition of 'successive' was provided. In *Cain*, we contrasted permissible successive petitions with those in which prisoners "repeatedly [attack] the validity of their convictions and sentences." [ ] It is these repeated attacks, which often take on new forms as the legal landscape shifts, that are the evil against which AEDPA is directed and the counterpoint to the rule laid out in *Cain.*[ ]

If AEDPA is aimed at minimizing repeated attacks on an underlying judgment and, to that end, permits "second or successive" petitions to be heard only via § 2244, then the small subset of permissible *non*-successive petitions must fit within these boundaries. When we look to the jurisprudence we find that contrasting petitions typically deemed non-successive with those typically deemed successive illuminates this middle ground. Later habeas petitions attacking the same judgment that was attacked in a prior petition tend to be labeled successive and must meet the standards for authorization under § 2244.[   ] In contrast, later habeas petitions attacking distinct judgments,[ ] administration of an inmate's sentence,[ ] a defective habeas proceeding itself,[ ] or some other species of legal error—when the error arises after the underlying conviction[ ]—tend to be deemed non-successive.[ ]

*Id.* at 221–22 (footnotes omitted) (emphasis in original).

The foregoing discussion in *Leal Garcia* was carefully considered, and fully endorsed, by the Eleventh Circuit Court of

Appeals in *Stewart,* 646 F.3d at 860–61. This Court now relies on both *Leal Garcia* and *Stewart* to ensure that the Eighth Circuit's ruling in *Singleton,* which is similar to the Fifth Circuit's ruling in *Cain,* is correctly applied to the case at bar.

Here, Petitioner contends that he has not filed a second or successive habeas petition, and he therefore does not need a pre-authorization order from the Eighth Circuit, because his claims are based on new law and new factual circumstances that had not arisen when he filed his first petition in *Martin '06.* Citing *Singleton,* and *Singleton*'s citation to *Cain,* Petitioner argues that he should be allowed to bring his current habeas claims, without a pre-authorization order, because his new claims had not arisen at the time of his previous petition. More specifically, Petitioner argues that his current claims were not previously available, because they are based on certain amendments to the Minnesota civil commitment statutes, together with new MSOP policies implemented pursuant to those statutory amendments, which had not yet become effective when he filed his first habeas petition in *Martin '06.*

Superficially, Petitioner's arguments appear to be supported by *Singleton* and *Cain,* because his current claims for relief are (at least arguably) based on new law and new factual circumstances that did not exist at the time of *Martin '06.* However, Petitioner has not directly addressed the issue that concerned the Courts in *Leal Garcia* and *Stewart.* He has not acknowledged that only certain types of claims

based on new law and/or new facts are "non-successive" for purposes of § 2244(b)(2) and (3), and he has not explicitly explained why his current claims are "non-successive" even under a properly narrowed construction of the Eighth Circuit's ruling in *Singleton.* Nevertheless, this Court independently finds that even under a properly narrowed interpretation of *Singleton,* the current Petition should not be treated as a second or successive petition that requires a pre-authorization order from the Court of Appeals.

What makes the current Petition unusual, and non-successive, is not that Petitioner's claims are based on new and previously unavailable law or facts. Those factors alone would not be sufficient to excuse Petitioner from the preauthorization requirement. The current Petition is unusual and non-successive because Petitioner is not presently challenging the validity of his original civil commitment order; he is not claiming that his civil commitment was invalid *ab initio.* Instead, Petitioner is claiming that regardless of the legality and validity of his civil commitment back in 2004, his continuing confinement has subsequently become unconstitutional because of (a) subsequent amendments to the Minnesota statutes governing the commitment of SDPs, and subsequent changes in MSOP policies that were implemented pursuant to the amended statutes, and (b) subsequent changes in the actual conditions of his confinement at MSOP, which allegedly resulted from the statutory amendments and ensuing policy changes.[4]

---

**4.** Petitioner has acknowledged that § 253B.185 actually was amended before he filed his first federal habeas petition in *Martin '06.* (Doc. No. 10, Pet'r's Reply Mem. 4.) However, that statutory amendment merely authorized MSOP to adopt new policies that would impose new restrictions on MSOP patients. Petitioner contends that the policies at

issue were not fully implemented until after *Martin '06,* and thus the new and more onerous conditions of confinement giving rise to the current Petition did not actually exist until after *Martin '06.* (*Id.* at 5–6.) For now, this Court accepts this explanation of Petitioner's current claims.

If Petitioner's current claims challenged the validity of his commitment order *per se*, his current Petition would be deemed a second or successive petition requiring a pre-authorization order, even if the claims were based on new and previously unavailable legal rulings or factual information. However, Petitioner is not seeking to revisit the commitment order that was reviewed and upheld in *Martin '06;* he is now claiming that he should be released from custody, regardless of the validity of his commitment order, because the current conditions of his confinement make it unconstitutional for the state to continue to confine him.

Petitioner's current claims for relief could not have been raised in *Martin '06* because they are predicated on subsequent changes in the statutes, MSOP policies, and conditions of Petitioner's confinement. Those changes alone, however, do not make the current Petition non-successive. There must be something more, otherwise § 2244(b)(2) and (3) would be rendered meaningless, for the reasons discussed in *Leal Garcia* and *Stewart.* The real reason that the current Petition is non-successive is that it is based on new law and facts *and* the claims presented in the Petition do not challenge the validity of the original commitment order, but only challenge Petitioner's continuing confinement in light of the alleged new law and facts.

■ This Court finds the current case to be most analogous to habeas cases in which a state prisoner seeks to be released on parole, or claims that his imprisonment is otherwise being wrongly extended beyond his proper release date. In such cases, the prisoner will be allowed to seek relief in a § 2254 habeas corpus petition, even if he previously challenged the constitutionality of his conviction in an earlier § 2254 petition that was denied on the merits. A later petition, challenging

only the postponement of the prisoner's release, is not deemed to be a second or successive petition that requires a pre-authorization order, because the petitioner is not attempting to re-challenge his original conviction and sentence. *See Crouch v. Norris,* 251 F.3d 720, 724 (8th Cir.2001) (stating that the state prisoner's "proposed challenge to the execution of his sentence should not be deemed 'second or successive' merely because he has previously filed a § 2254 challenge to the constitutionality of his convictions"); *Pennington v. Norris,* 257 F.3d 857, 858 (8th Cir.2001) (stating that habeas petitioner's "parole denial claim isn't 'second or successive,'" and he therefore "doesn't require authorization from this court before proceeding in district court with that claim"); *Restucci v. Bender,* 599 F.3d 8, 9 (1st Cir.2010) (stating that petitioner's third § 2254 petition was not a successive petition that required a preauthorization order, because the claims advanced in the current petition did not challenge the petitioner's underlying criminal conviction, but arose from the denial of his bid for parole); *James v. Walsh,* 308 F.3d 162, 167–68 (2nd Cir.2002) (stating that the state prisoner did not need a § 2244(b) preauthorization order to file a second § 2254 habeas petition claiming only that state prison officials had miscalculated his conditional release date). Similarly here, Petitioner is not presently challenging the underlying judgment that effected his civil commitment, but rather, he is challenging only the constitutionality of his continuing custody in light of subsequent changes in the law, and subsequent changes in the conditions of his confinement.

■ Needless to say, Petitioner still has a long way to go before he can be granted a writ of habeas corpus. He still must prove that he is currently being confined under conditions that are, in fact, unconsti-

tutional, and he still must satisfy the stringent requirements prescribed by § 2254(d). Petitioner will also have to prove that a writ of habeas corpus is the proper remedy for his current conditions-of-confinement claims.[5]

For now, this Court finds only that Petitioner's current habeas corpus Petition is not a second or successive petition that requires a pre-authorization order from the Eighth Circuit Court of Appeals. Thus, this Court concludes that the current Petition should not be summarily dismissed for lack of jurisdiction, and that Respondent should be required to address the Petition on the merits. Respondent is therefore directed to file a comprehensive answer to the Petition, addressing Petitioner's claims on the merits, by no later than October 28, 2011. If Petitioner intends to file a reply to Respondent's answer, he will have to do so by no later than November 25, 2011. Thereafter, no further submissions shall be permitted from either party without prior approval from the Court.

## CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. By no later than **October 28, 2011,** Respondent shall file an answer address-

ing Petitioner's current habeas corpus Petition on the merits; and

2. If Petitioner intends to file a reply to Respondent's answer to the Petition, he must do so by no later than **November 25, 2011.**

---

5. Normally, if a state detainee is confined under conditions that are unconstitutional, the proper means of seeking relief is a civil rights action, and the proper remedy is an injunction or other court order that ameliorates the unconstitutional conditions. State detainees normally are not entitled to a writ of habeas corpus effecting release from custody based on a conditions-of-confinement claim, even if the claim is meritorious. *See Gomez v. United States,* 899 F.2d 1124, 1126 (11th Cir.1990) ("[E]ven if a prisoner proves an allegation of mistreatment in prison that amounts to cruel and unusual punishment, he is not entitled to release," but rather "[t]he appropriate Eleventh Circuit relief from prison conditions that violate the Eighth Amendment during legal incarceration is to require the discontinuance of any improper practices, or to require correction of any condition causing cruel and unusual punishment."). Thus, even if the current conditions of Petitioner's confinement are found to be unconstitutional, it is by no means certain that he would therefore be entitled to a writ of habeas corpus that would release him from confinement.