[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15821

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 14, 2011
JOHN LEY
CLERK

D. C. Docket Nos. 08-90022-CV-CAR-5,
01-00049-CR-CAR

SHERODNEY STEWART,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(July 14, 2011)

Before TJOFLAT, WILSON and SEYMOUR,* Circuit Judges.

_____

    * Honorable Stephanie K. Seymour, United States Circuit Judge for the Tenth Circuit,
sitting by designation.

WILSON, Circuit Judge:

Within weeks of being sentenced as a career offender, Sherodney Stewart set out, *pro se*, to have his predicate state convictions vacated. He succeeded. He then filed a motion under 28 U.S.C. § 2255, which is the subject of this appeal. It was his second such motion, but because it was not "second or successive" as that term is understood in context of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we reverse the district court's dismissal and remand for resentencing.

## I. BACKGROUND

Stewart pleaded guilty by agreement to distributing more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii), and 18 U.S.C. § 2, on March 12, 2002. In June 2002, the district court sentenced him as a career offender to 360 months of imprisonment, to be followed by five years of supervised release. We dismissed his direct appeal on February 6, 2003, based on an appeal-waiver provision in his plea agreement. Stewart did not seek *certiorari* review of that dismissal, rendering his judgment final on May 7, 2003. He had one year from that date to seek habeas relief. See 28 U.S.C. § 2255(f)(1).

On May 3, 2004—four days before that year expired—Stewart filed a *pro se* motion entitled, "Motion for Equitable Tolling of the Time Period for the Filing of a § 2255 [Motion]." In it, he requested six additional months to file a § 2255

2

motion, and he articulated three challenges he intended to raise, including a Sixth Amendment ineffective-assistance-of-counsel claim, based on his attorney's failure to investigate the state convictions that predicated his career offender enhancement. The district court could have construed this motion for equitable tolling as a § 2255 motion;[1] instead, it entered an order denying the motion on August 19, 2004, that did not mention Stewart's claims.

Stewart restated those claims in a *pro se* § 2255 motion that he filed five weeks later, on September 29, 2004. He also filed a separate motion asking the court to consider his § 2255 claims as having been timely raised, based on their inclusion in his motion for equitable tolling. Again, the court disregarded the substance of Stewart's claims and dismissed his § 2255 motion as time-barred.

Meanwhile, Stewart had already begun the process of challenging his predicate state convictions. From August 2002 through March 2003, he enlisted

---

[1] "It is well established that the standards governing the sufficiency of habeas corpus petitions are less stringent when the petition is drafted *pro se* and without the aid of counsel." Williams v. Griswald, 743 F.2d 1533, 1542 (11th Cir. 1984) (citing Haines v. Kerner, 404 U.S. 519, 520–21, 92 S. Ct. 594, 595–96 (1972) (per curiam) (noting that *pro se* pleadings are "[held] to less stringent standards than formal pleadings drafted by lawyers")); see also Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) ("Where a [*pro se*] motion, nominally seeking an extension of time, contains allegations sufficient to support a claim under section 2255, a district court is empowered, and in some instances may be required, under Haines to treat that motion as a substantive motion for relief under section 2255.").

The Government conceded as much in its response to Stewart's motion: "[Stewart's] allegations would normally be sufficient to raise a claim under Section 2255," and "the district court does have the discretion to consider [Stewart's] motion to equitably toll as a motion under Section 2255."

the help of his father in gathering records and transcripts related to the state convictions, and he conducted legal research almost daily in the prison law library. After obtaining the necessary documents, Stewart filed a *pro se* state habeas corpus petition in April 2003. That petition traveled through the Georgia court system, and—after a favorable reversal by the Georgia Supreme Court—Stewart's state convictions were ultimately vacated on July 2, 2008.

The following month, on August 15, 2008, Stewart filed a second *pro se* § 2255 motion, requesting vacatur of his career offender enhancement pursuant to Johnson v. United States, 544 U.S. 295, 125 S. Ct. 1571 (2005). On October 15, 2009, the district court dismissed the motion, concluding that it was successive because his first § 2255 motion was "decided adversely to him." The district court also noted that even if the motion were not successive, it would still have been dismissed because Stewart did not act with due diligence in obtaining the vacatur of his state convictions.

We granted Stewart a Certificate of Appealability ("CoA") on this issue: "Whether the district court erred in finding that Stewart's motion was second or successive in light of Stewart's argument that the grounds he has asserted for challenging his sentence did not exist at the time he filed his previous motion to

vacate."[2]

## II. DISCUSSION

The question before us is whether Stewart's numerically second § 2255 motion was "second or successive" under AEDPA, and we consider that question *de novo*. See McIver v. United States, 307 F.3d 1327, 1329 (11th Cir. 2002).

### A. *Johnson v. United States*

In Johnson, the Supreme Court held that the state court vacatur of a predicate conviction is a new "fact" that triggers a fresh one-year statute of limitations under § 2255(f)(4),[3] so long as the petitioner exercised due diligence in seeking that order. 544 U.S. at 302, 125 S. Ct. at 1577. The government had

---

[2] Stewart's Certificate of Appealability also addressed: "[w]hether the district court erred in finding that Stewart's motion to vacate was untimely filed." On appeal, the Government concedes that Stewart's motion was timely because he exercised due diligence in pursuing the vacatur of his state convictions:

> Within only a few months of receiving a sentence that was enhanced based on his state court convictions, Stewart took steps to begin the process of having those convictions vacated. Less than a year after the entry of judgment in the district court, Stewart had filed his habeas petition in the superior court. Having filed his habeas petition in what he believed to be the proper venue, the amount of time that it took the state courts to process his petition was largely beyond Stewart's control. . . . Accordingly, the Government does not seek to argue here that Stewart failed to act with due diligence in seeking to have his state court convictions vacated.

Gov't Br. at 27–28. We agree that Stewart exercised due diligence, and we reverse without addressing the alternate ground for the district court's decision in depth.

[3] "A 1-year period of limitation shall apply to a motion under [§ 2255]. The limitation period shall run from the latest of-- . . . (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).

5

argued that the facts supporting Johnson's claim were those on which he challenged the validity of his state convictions, so they did not fit into the § 2255(f)(4) rubric. Id. at 305–06, 125 S. Ct. at 1578–79. The Court disagreed, explaining that though the "circumstances rendering the underlying predicate conviction invalid are ultimate subjects of fact supporting the § 2255 claim," a petitioner cannot obtain relief under § 2255 before the state vacatur. Id. at 305, 125 S. Ct. at 1578–79. Therefore, the state court vacatur is the "fact" that forms the basis of a challenge under § 2255. Id. at 305–07, 125 S. Ct. at 1578–80.

The Court's rationale was based, in part, on its previous holdings in Custis v. United States[4] and Daniels v. United States[5]—which explain that only *after* an underlying conviction is successfully challenged may a defendant seek relief in federal courts. Id. at 303–04, 125 S. Ct. at 1577–78. Having concluded that a defendant's ability to pursue federal habeas relief was contingent upon his success at the state level, the Court was left to determine how such a defendant was to obtain relief. The Court ultimately decided that, because success in the state courts is a prerequisite for federal habeas relief, and because the facts supporting a state court challenge "cannot by themselves be the basis of a § 2255 claim," the vacatur

---

[4] 511 U.S. 485, 497, 114 S. Ct. 1732, 1739 (1994).

[5] 532 U.S. 374, 382, 121 S. Ct. 1578, 1583 (2001).

6

order itself gives rise to a movant's claim. Id. at 305–07, 125 S. Ct. at 1578–80.

Johnson established that the basis for a claim challenging a sentence predicated on faulty state convictions arises when the order vacating those predicate convictions issues. Id., 125 S. Ct. at 1579–80. The vacatur order gives a defendant both the basis to challenge an enhanced federal sentence and a new one-year period in which to pursue that challenge.

*B. AEDPA's Gatekeeping Provisions: "Second or Successive"*

AEDPA dramatically limits successive attempts at habeas relief. If a § 2255 motion is deemed "successive," a court may consider it only if it complies with that section's gatekeeping provision, which provides:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain --
>
> > (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> >
> > (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). AEDPA's restrictions on second or successive motions are meant to forestall abuse of the writ of habeas corpus, see Felker v. Turpin, 518 U.S. 651, 664, 116 S. Ct. 2333, 2340 (1996), by, for instance, barring successive

motions raising habeas claims that could have been raised in earlier motions where there was no legitimate excuse for failure to do so, see McCleskey v. Zant, 499 U.S. 467, 493–95, 111 S. Ct. 1454, 1469–71 (1991).  But the Supreme Court has unequivocally explained that the phrase "second or successive" is not self-defining and does not refer to all habeas applications filed second or successively in time. Panetti v. Quarterman, 551 U.S. 930, 943–44, 127 S. Ct. 2842, 2853 (2007).[6] Rather, it is a term of art that takes its full meaning from the Supreme Court's case law, including decisions predating the enactment of AEDPA.  Id., 127 S. Ct. at 2853.

Particularly when a petitioner raises a claim that could not have been raised in a prior habeas petition, courts have forgone a literal reading of "second or successive."  See, e.g., Singleton v. Norris, 319 F.3d 1018, 1023 (8th Cir. 2003) (en banc) (finding that Singleton's petition was not successive when it raised a claim that did not arise until he was subject to an involuntary medication order pursuant to Washington v. Harper[7] and his execution date had been scheduled);

---

[6] Panetti addressed a petition for habeas relief under 28 U.S.C. § 2254.  Because of the similarities between the provisions governing second or successive petitions under § 2254 and second or successive motions under § 2255, precedent interpreting one of these parallel restrictions is instructive for interpreting its counterpart. See 28 U.S.C. §§ 2244(b)(2), 2255(h); see also Gonzalez v. Sec'y Dept. of Corr., 366 F.3d 1253, 1288 nn.5&6 (11th Cir. 2004) (en banc) (Tjoflat, J., concurring in part, dissenting in part); In re Dean, 341 F.3d 1247, 1249 n.4 (11th Cir. 2003) (per curiam) (denying application to file a successive § 2255 motion).

[7] 494 U.S. 210, 110 S. Ct. 1028 (1990).

8

United States v. Orozco-Ramirez, 211 F.3d 862, 869, 871 (5th Cir. 2000)

("[Orozco-Ramirez's] claim of ineffective assistance of counsel during [his] out-of-time appeal . . . could not have been raised in [his] prior proceeding and, thus, is not 'second or successive.'").[8]

But adopting that approach too broadly would threaten Congress's clear intention to limit "second or successive" attempts at post-conviction relief. Therefore, we must confront the difficult task of distinguishing between those previously unavailable claims that Congress contemplated in AEDPA's gatekeeping provisions and those that cannot reasonably be deemed "successive."

The Fifth Circuit addressed this difficulty in Leal Garcia v. Quarterman, 573

---

[8] Additionally, there are numerous cases in which courts have determined that petitions challenging the administration of the petitioner's sentence were not "second or successive," in part, because the claims they raised did not exist or could not have been raised in a prior petition. See, e.g., Benchoff v. Colleran, 404 F.3d 812, 817 (3d Cir. 2005) (stating, "a subsequent petition that challenges the administration of a sentence is clearly *not* a 'second or successive' petition within the meaning of § 2244 if the claim had not arisen or could not have been raised at the time of the prior petition," but ultimately finding that Benchoff's claim did not fall within that category); James v. Walsh, 308 F.3d 162, 168 (2d Cir. 2002) ("[T]he present claim had not arisen by 1997, when James filed his first habeas petition. Because the claim asserted in the 1999 petition did not exist when James filed his 1997 petition, the 1999 petition was not 'second or successive' for the purposes of AEDPA's gatekeeping provisions."); Crouch v. Norris, 251 F.3d 720, 724 (8th Cir. 2001) (concluding Crouch's parole-related claims did not abuse the writ and were not "second or successive" because he could not have raised them in his first petition); In re Cain, 137 F.3d 234, 236–37 (5th Cir. 1998) (per curiam) (holding that Cain's claim, which challenged the administration of his sentence, had not arisen at the time of the previous petition and was not barred by § 2244(b)); see also Medberry v. Crosby, 351 F.3d 1049, 1062 (11th Cir. 2003) ("We agree with the decisions issued by many of our sister circuits that a petition challenging [prison] disciplinary proceedings would not be second or successive where the claim could not have been raised in an earlier petition and does not otherwise constitute an abuse of the writ.").

9

F.3d 214, 222 (5th Cir. 2009). It concluded that a subsequent § 2254 petition that was based on a defect that did not arise until after the proceedings on the previous petition were completed was not successive. Id. at 224. The facts in Leal Garcia are complicated and presented fully in the Fifth Circuit's opinion, but the following facts are most relevant for our purposes.

After Leal Garcia, a Mexican national, filed his first petition for habeas relief, the International Court of Justice ("ICJ") issued its decision in Case Concerning Avena and Other Mexican Nationals (Mexico v. United States), 2004 I.C.J. 12 (Judgment of Mar. 31, 2004) ("Avena"), which held that the United States violated the Vienna Convention's guarantee of consular access and ordered that the convictions and sentences of those individuals whose rights were violated be reviewed. Leal Garcia, 573 F.3d at 216–18. In response, President George W. Bush signed a declaration ordering states to comply with the mandate in Avena. Id. at 218. Based on the President's declaration, Leal Garcia filed a state habeas petition requesting review of his conviction and sentence. Id. After determining that Avena and the President's declaration were not binding on the states, the Texas Court of Criminal Appeals denied Leal Garcia's pending Avena-related state petition. Id. Leal Garcia then returned to federal court, filing his *second* federal habeas petition, which challenged the state court's refusal to grant him review in

10

light of Avena and the President's declaration. Id. at 217, 220 & n.27. The

Western District of Texas dismissed that petition for lack of jurisdiction. Id. at

217.

On appeal, the Fifth Circuit set out to determine if Leal Garcia's petition was

successive under AEDPA, and, therefore, subject to the statute's gatekeeping

provisions. Id. at 219. Leal Garcia relied on In re Cain,[9] 137 F.3d 234 (5th Cir.

1998), to argue that his petition was "non-successive because it [was] based on a

claim *unavailable to him* at the time of his first habeas petition." Leal Garcia, 573

F.3d at 220 (emphasis added). The court rejected the full breadth of Leal Garcia's

interpretation because it did not comport with AEDPA's treatment of the term

"successive." Id. at 221. To adopt Leal Garcia's approach—classifying as "non-

successive" any petition based on a claim that was "unavailable" at the time of a

first petition—would nullify AEDPA's gatekeeping provisions. Id. (explaining

that "claims based on new rules of constitutional law (made retroactive by the

Supreme Court)," and "claims based on a *factual* predicate not previously

discoverable" are both subject to the gatekeeping provision; therefore, both are

previously unavailable *and* "successive" under AEDPA).

But the court determined that Leal Garcia's claim fell within a small subset

---

[9] Supra, n.8.

of unavailable claims that could not reasonably be categorized as "successive." Id.

at 222, 224. After noting that AEDPA's gatekeeping provisions are meant to

minimize repeated attacks on an underlying judgment, the court stated:

> [I]f the purported defect existed, or the claim was ripe, at the time of the prior petition, the later petition is likely to be held successive even if the legal basis for the attack was not. *If, however, the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive.*[10]

Id. at 222 (emphasis added). The court noted that the President's declaration,

meant to make Avena enforceable on the states, was not issued until after Leal

Garcia's first petition was denied. Id. at 223–24. Therefore, "the basis for his

claim—Texas's refusal to conduct the review of his conviction—did not occur

until well after proceedings on his first petition had concluded." Id. at 224.

Consequently, Leal Garcia's subsequent petition was not successive under

AEDPA. Id.

The Fifth Circuit's approach in Leal Garcia is consonant with the Supreme

Court's reasoning in Panetti v. Quarterman, 551 U.S. at 943–45, 127 S. Ct. at

---

[10] The court listed the following examples of this second type of petition: attacks on (1) distinct judgments, (2) administration of an inmate's sentence, (3) defective habeas proceedings, and (4) legal errors that arise after the underlying conviction. Leal Garcia, 573 F.3d at 222.

12

2853.  There, the Court concluded that because the petitioner's <u>Ford</u>[11] claim did not ripen until after his first habeas petition was fully adjudicated on the merits, his subsequent petition was not "second or successive" under AEDPA.[12]  The Court rejected the state's argument that a prisoner contemplating a future <u>Ford</u> claim must preserve that claim by filing it in his or her first habeas petition.  <u>Id.</u> at 943, 946, 127 S. Ct. at 2852, 2854.  It explained that, were such an interpretation of

---

[11]  <u>Ford v. Wainwright</u>, 477 U.S. 399, 409–10, 106 S. Ct. 2595, 2602 (1986) ("[T]he Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane.").

[12]  In <u>Tompkins v. Secretary, Department of Corrections</u>, we refused to apply <u>Panetti</u> to a petitioner's second or successive petition that raised three claims that "can be and routinely are raised in initial habeas petitions."  557 F.3d 1257, 1260 (11th Cir. 2009) (per curiam); <u>see also</u> <u>In re Davis</u>, 565 F.3d 810, 820 n.6 (11th Cir. 2009) (per curiam) (noting in dicta that <u>Panetti</u>'s holding was limited by virtue of the nature of <u>Ford</u> claims, but ultimately concluding that an actual innocence claim "is not the kind of claim that would not ripen until sometime in the future like an incompetency claim").  We reasoned that the Supreme Court limited the holding of <u>Panetti</u> to <u>Ford</u> claims because "a <u>Ford</u> claim is different from *most* other types of habeas claims."  <u>Tompkins</u>, 557 F.3d at 1259 (emphasis added).  We remarked that <u>Ford</u> claims are "different because '<u>Ford</u>-based incompetency claims, as a general matter, are not ripe until after the time has run to file a first federal habeas petition.'"  <u>Id.</u> at 1259–60 (quoting <u>Panetti</u>, 551 U.S. at 943, 127 S. Ct. at 2852).  And we quoted the Supreme Court's characterization of <u>Panetti</u>'s posture as "unusual."  <u>Id.</u> at 1259.
     The posture in <u>Panetti</u> was "unusual," but it was not *unique*.  In <u>Tompkins</u>, we refused to apply <u>Panetti</u> to claims that "can be and routinely are raised in initial habeas petitions."  <u>Id.</u> at 1260.  But when a claim *could not have been raised* in a prior habeas petition, courts have interpreted <u>Panetti</u> to permit that claim to be raised in a subsequent petition.  <u>United States v. Buenrostro</u>, 638 F.3d 720, 725 (9th Cir. 2011) (per curiam) ("<u>Panetti</u> do[es] not apply only to <u>Ford</u> claims.  Prisoners may file second-in-time petitions based on events that do not occur until a first petition is concluded."); <u>Johnson v. Wynder</u>, 408 F. App'x 616, 619 (3d Cir. 2010) ("We see no reason to avoid applying <u>Panetti</u> in the context of other types of claims that ripen only after an initial federal *habeas* petition has been filed."); <u>United States v. Lopez</u>, 577 F.3d 1053, 1064 (9th Cir. 2009) ("The considerations the [Supreme] Court identified in support of its holding are not specifically limited to <u>Ford</u> claims, and therefore must be considered in deciding whether other types of claims that do not survive a literal reading of AEDPA's gatekeeping requirements may nonetheless be addressed on the merits."(citation omitted)).

13

"second or successive" correct, "'the implications for habeas practice would be far reaching and seemingly perverse.'" Id. at 943, 127 S. Ct. at 2852 (quoting Martinez-Villareal, 523 U.S. at 644, 118 S. Ct. at 1621). "A prisoner would be faced with two options: forgo the opportunity to raise a Ford claim in federal court; or raise the claim in a first federal habeas application (which generally must be filed within one year of the relevant state-court ruling), even though it is premature." Id., 127 S. Ct. at 2852.

Mindful of the "implications for habeas practice," the purposes of AEDPA, and its prior habeas decisions—including those applying the abuse-of-the writ doctrine—the Court determined "that Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a Ford-based incompetency claim filed as soon as that claim is ripe." Id. at 945, 127 S. Ct. at 2853. The Court ultimately determined that Panetti's Ford claim was not "second or successive," thereby refusing to construe AEDPA "in a manner that would require unripe (and, often, factually unsupported) claims to be raised as a mere formality, to the benefit of no party." Id. at 947, 127 S. Ct. at 2855.

### III. APPLICATION

We turn now to the related questions of whether Stewart's numerically

14

second § 2255 motion is "second or successive,"[13] and how Stewart must pursue relief.

The Government first argues that Stewart's second § 2255 motion is successive because the facts supporting the claim existed when he filed his first § 2255 motion—essentially seeking to relitigate the Supreme Court's decision in Johnson.[14]  The Johnson Court squarely rejected this argument, explaining that the circumstances rendering predicate convictions invalid may factually support the defendant's state-court challenge, but they "cannot by themselves be the basis of a § 2255 claim."  544 U.S. at 305, 125 S. Ct. at 1578–79.  Instead, the order vacating a defendant's predicate convictions forms the basis of a § 2255 claim.  Id. at 306–07, 125 S. Ct. at 1579–80.

Stewart's situation falls within what the Fifth Circuit recognized is a small subset of unavailable claims that must not be categorized as successive.  Leal

---

[13]  Our panel in In re Dean, 341 F.3d at 1247–49, did not have the benefit of Johnson or Panetti.  Therefore, its rationale—premised upon the *assumption* that Dean's second attempt at federal post-conviction relief was "second or successive"—does not control our decision today.  See Flowers v. United States, 764 F.2d 759, 761 (11th Cir. 1985).

[14]  We have never directly considered whether Johnson is limited to first § 2255 motions.  See In re Conklin, 416 F.3d 1281, 1283 n.1 (11th Cir. 2005) (per curiam) (denying application to file a successive § 2255 motion).  In Unthank v. Jett, 549 F.3d 534, 535–36 (7th Cir. 2008), the Seventh Circuit concluded it is.  But we find that case distinguishable, and therefore, not persuasive for our purposes today.  The Seventh Circuit faced what was the latest of a long series of Unthank's post-conviction challenges.  Id. at 534.  He had most certainly abused the writ, and this fact informed the court's decision.  There was no such abuse in this case.  Stewart attempted to seek habeas relief only twice—once in 2004, and once in 2008 after he obtained the vacatur of his predicate state convictions.

15

Garcia, 573 F.3d at 222. In Leal Garcia, issues pertaining to consular access existed prior to the defendant's conviction and sentence, but the basis for his second habeas petition arose only after the Texas courts rejected President Bush's declaration and the ICJ's mandate in Avena. Id. at 218, 223–24. Applying the same reasoning, the facts indicating there might be flaws in Stewart's Georgia convictions existed in 2004, but the *basis* for his Johnson claim—the order vacating those predicate convictions—did not exist until July 2, 2008. See Johnson, 544 U.S. at 305–07, 125 S. Ct. at 1578–80.

"[C]laims based on a *factual* predicate not previously discoverable are successive," but "[i]f . . . the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive." Leal Garcia, 573 F.3d at 221, 222. We are not faced with a claim based on facts that were merely undiscoverable. Rather, Stewart has presented a claim, the basis for which did not exist before the vacatur of his predicate state convictions—after his first § 2255 motion had already been filed and dismissed.

Assuming he has acted with due diligence, "a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated." Johnson, 544 U.S. at 303, 125 S. Ct. at 1577. Because Stewart set out to

16

have his state convictions vacated just weeks after he was sentenced as a career offender,[15] succeeded, and then promptly brought a § 2255 motion raising a Johnson claim, we believe he acted diligently.

But how must Stewart pursue the relief he is due?  Together, Custis, Daniels, and Johnson establish that the time for challenging a federal sentence based on a faulty state conviction is only after that conviction has been vacated.  Therefore, the time for Stewart to pursue his Johnson claim is now.  The Government urges us to conclude that, even so, Stewart should have waited until now to file his first § 2255 motion.[16]  This argument is untenable.  The Government's suggested approach would force petitioners like Stewart to choose between claims available immediately—such as claims alleging ineffective assistance of counsel—and those

---

[15]  In its order granting Stewart's petition for state habeas relief and remanding to the trial court, the Georgia Supreme Court explained that under Georgia law, Stewart had no unqualified right to a direct appeal because he pleaded guilty to his state-court offenses.  See Smith v. State, 470 S.E.2d 436, 437 (Ga. 1996).  Additionally, to attack a Georgia state conviction, the sentence for which has been completely served, a habeas corpus petitioner must demonstrate that he is suffering adverse collateral consequences flowing from that conviction.  Turner v. State, 668 S.E.2d 692, 693 (Ga. 2008).  The court noted that Stewart's career criminal enhancement based on his challenged state convictions was a collateral consequence that permitted his habeas petition to proceed.  See Parris v. State, 208 S.E.2d 493, 496 (Ga. 1974).  Thus, Stewart's career criminal enhancement was the very thing that permitted him to challenge his Georgia convictions.

[16]  The Government explains, "[h]aving already used the § 2255 motion authorized by Congress, he may not now use a second to have his sentence reduced based on the later vacatur of his state court convictions. . . . Stewart's actions may have been unwise, but he is bound by them nevertheless."  Gov't Br. at 20–21.

17

available only later—such as Johnson claims.[17]  To require Stewart (and those similarly situated) to forgo raising good and viable claims in hopes that one day he might obtain relief under Johnson is exactly the kind of perverse result that the Supreme Court counseled against in Martinez-Villareal.

Therefore, we are left with two options.  Either (1) we could instruct future defendants to include potential Johnson claims in their initial § 2255 motions and ask the district courts to "stay and abey" while the defendants challenge their predicate convictions in state courts; or (2) we could conclude that Stewart properly raised his 2008 motion when it first became ripe.  The Government argues that we should take the former option.  Panetti's reasoning illustrates that the latter option is superior.

As in Panetti, a literal application of AEDPA's "second or successive" language in this situation would frustrate the purposes of AEDPA by leading movants to inundate district courts with meritless and unripe petitions alleging their federal sentences were improperly enhanced by flawed prior state convictions, so that those movants could preserve the right to request resentencing

---

[17]  It is worth noting here that, at least for Stewart, this approach would have been even more speculative.  Johnson was not decided until April 4, 2005—months after Stewart's initial one-year time period lapsed.  Thus, Stewart's ability to access a refreshed one-year limitations period under § 2255(f)(4) after he obtained his vacatur order had not yet been established when he would have faced the choice proposed by the Government.

18

later if, by some chance, they were to succeed both in having those state convictions vacated and in satisfying <u>Johnson</u>'s due diligence requirement in the process. The phrase "second or successive" must not be interpreted "in a manner that would require unripe (and, often, factually unsupported) claims to be raised as a mere formality, to the benefit of no party," <u>Panetti</u>, 551 U.S. at 947, 127 S. Ct. at 2855, and we decline to adopt such an interpretation today.

Our decision is informed, not only by the Supreme Court's holding in <u>Panetti</u>, but also by the interests of judicial economy. For every <u>Johnson</u> claim that will eventually become viable, there are many more that will not. We are disinclined to instruct district courts to hold all such motions in abeyance for years, while defendants challenge state convictions, particularly when the other path is logical and consistent with Supreme Court precedent.

## IV. CONCLUSION

Because the basis for his <u>Johnson</u> claim did not exist before his proceedings on his initial § 2255 motion concluded, Stewart's numerically second motion is not "second or successive," and § 2255(h)'s gatekeeping provision does not apply. And because attempting to raise his <u>Johnson</u> claim in his initial § 2255 motion would have been an empty formality, Stewart was permitted to raise it in a second, diligently pursued § 2255 motion. Accordingly, we reverse and remand for

19

resentencing consistent with this opinion.

REVERSED and REMANDED.