JORDAN, Circuit Judge,
joined by WILSON, MARTIN, and ROSENBAUM, Circuit Judges, dissenting:
At the end of the day, what constitutes a fundamental defect resulting in a complete *1156 miscarriage of justice comes down to a matter of considered judgment. In my judgment, having an individual serve an additional 81 months in prison due to an erroneous career offender designation under the advisory Sentencing Guidelines constitutes such a miscarriage of justice, and for that reason I respectfully dissent.
I
Kevin Spencer is serving more than 12 years in prison (151 months to be exact) for selling $20 worth of crack cocaine. The panel found, see Spencer v. United States, 727 F.3d 1076, 1100 (11th Cir.2013), the government now ’concedes, see En Banc Brief for the United States at 57-58, and the majority does not dispute, that Mr. Spencer’s mistaken career offender designation more than doubled his advisory sentencing range from 70-87 months to 151-188 months. For those of us familiar with — and sometimes numbed by — the ranges produced by application of the Sentencing Guidelines, it may be easy to overlook the dramatic increase resulting from the error. To put it in perspective, the 81-month increase is roughly the time needed to complete both college and law school.
Mr. Spencer timely and consistently objected to the career offender designation, only to be told he was wrong. As it turns out, he was right. Unfortunately, the majority now rules that Mr. Spencer cannot use 28 U.S.C. § 2255 to correct the error.
II
The majority holds that Mr. Spencer’s claim is not cognizable in a timelyfíled first motion to vacate under § 2255 for two basic reasons. First, Mr. Spencer’s 151-month sentence, though erroneous, was within the statutory maximum. Second, Mr. Spencer’s prior conviction has not been vacated. Neither reason, it seems to me, is convincing.
A
Under § 2255, a federal prisoner “claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.” Despite the breadth of this statutory language, the Supreme Court has held that not “every asserted error of law can be raised on a § 2255 motion.” Davis v. United States, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). Instead, “the appropriate inquiry” when dealing with a non-constitutional claim is “whether the claimed error of law [is] a fundamental defect which inherently results in a complete miscarriage of justice.” Id. (quotation marks omitted). See also Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (holding that collateral relief is permitted where there is a “fundamental defect which inherently results in a complete miscarriage of justice,” “an omission inconsistent with the rudimentary demands of fair procedure,” or “exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent”).
The Supreme Court has never defined the phrase “the laws of the United States” in § 2255. But there are strong reasons to believe that a career offender error under the advisory Sentencing Guidelines fits easily within that language. First, an error in computing the guideline range renders a sentence procedurally unreasonable and reversible on direct appeal. See, *1157 e.g., Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); United States v. Dougherty, 754 F.3d 1353, 1358 (11th Cir.2014). Second, the Supreme Court has recently held that the incorrect application of the advisory Sentencing Guidelines can result in an ex post facto violation. In so ruling, the Court expressly rejected the argument that “the Sentencing Guidelines lack sufficient legal effect to attain the status of a ‘law' within the meaning of the Ex Post Facto Clause.” Peugh v. United States, — U.S. -, 133 S.Ct. 2072, 2085-87, 186 L.Ed.2d 84 (2013). If the advisory Sentencing Guidelines are laws for ex post facto purposes, it is difficult to see why they are not also laws under § 2255.
B
Contrary to the majority’s suggestion, there is no absolute rule (announced by the Supreme Court or by us) that a prisoner serving a sentence less than the statutory maximum (regardless of the number of additional years in prison he or she is serving as a result of the alleged error) cannot establish that a sentencing error constitutes a fundamental defect inherently resulting in a complete miscarriage of justice. That may be the rule that the majority thinks appropriate, but it is certainly not one carved in precedential stone. As the United States recognized at oral argument, the Supreme Court has left open whether any nonconstitutional sentencing errors are cognizable under § 2255. Cf. Davis, 417 U.S. at 345, 94 S.Ct. 2298 (“[W]e conclude that the text of the statute cannot sustain the Government’s position that only claims of ‘constitutional dimension’ are cognizable under § 2255.”).
Before discussing the relevant Supreme Court decisions on the scope of § 2255, a cautionary note is in order. Most of the important decisions applying the complete miscarriage of justice standard were decided in the 1960s and 1970s, at a time when federal sentencing was very different than it is today. Back then, there were no Sentencing Guidelines, mandatory or advisory. And federal sentences at or below the statutory maximum generally could not be reviewed on direct appeal. See United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (“a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review”); United States v. Vice, 562 F.2d 1004, 1005 (5th Cir.1977) (“The sentence itself is within the statutory limits and therefore is not subject to appellate] review.”). Now, of course, we have Sentencing Guidelines, currently of an advisory nature, and the length of a sentence can be reviewed on direct appeal for substantive reasonableness. So we need to be careful when analyzing or relying on Supreme Court cases from 40 to 50 years ago to decide the issue before us today. Nevertheless, á look at that precedent convinces me that Mr. Spencer’s claim is cognizable under § 2255.[1]
C
The Supreme Court decided United States v. Behrens, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963), less than two years after it formulated the complete miscarriage of justice standard in Hill, 368 U.S. at 428, 82 S.Ct. 468. Behrens affirmed the grant of § 2255 relief to a defendant who was not present when his sentence was ultimately imposed in violation of a federal rule, even though that *1158 sentence was within (and well below) the statutory limit. Under the statutory scheme existing at the time, the district court committed the defendant (who was convicted of assault with intent to murder) to the custody of the Attorney General for the statutory maximum sentence of 20 years pending a study by the Director of the Bureau of Prisons. At the time of the initial sentencing hearing, the “defendant and his counsel were afforded the usual right of allocution[.]” Behrens v. United States, 312 F.2d 223, 227 (7th Cir.1962) (Knoch, J., dissenting).
The district court’s order in Behrens “provided that after the results of the study and the Director’s recommendations were reported to the court, [the defendant’s] commitment, deemed to be for 20 years, would be subject to modification in accordance with ... 18 U.S.C. § 4208(b).” Behrens, 375 U.S. at 163, 84 S.Ct. 295. After receiving the report, the district court — without the presence of the defendant or his counsel — entered an order reducing the defendant’s sentence from 20 years to 5 years. Id. at 163-64, 84 S.Ct. 295. Despite acknowledging that a defendant’s presence is not always required when a sentence is modified, the Supreme Court ruled that the defendant should have been present — under Rule 32(a) of the Federal Rules of Criminal Procedure- — when the district court reduced his sentence. Otherwise, he would be denied the right to allocute and present information in mitigation of punishment before the final imposition of sentence. Id. at 166, 84 S.Ct. 295 (“We hold that it was error to impose this sentence in the absence of [the defendant] and his counsel.”).
The Supreme Court in Behrens, therefore, used § 2255 to set aside a sentence below the statutory maximum (i.e., a sentence the majority would characterize as “lawful”) for a non-constitutional violation (i.e., the violation of a federal rule). Behrens, which has not been overruled (or criticized) by the Supreme Court since its issuance, and whose continued viability we recognized in United States v. Tamayo, 80 F.3d 1514, 1518 n. 5 (11th Cir.1996), runs counter to the majority’s restrictive interpretation of § 2255.
There are, of course, a number of Supreme Court cases holding that certain types of non-constitutional error are not subject to collateral attack. These include Hill, 368 U.S. at 428, 82 S.Ct. 468 (defendant who was not affirmatively told of his right to allocute under Rule 32(a) could not use § 2255 to set aside his sentence), and United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (defendant who was not informed of special parole term during guilty plea colloquy could not use § 2255 to set aside his conviction). But these decisions are relatively narrow in scope.
In Hill, the defendant “was [not] affirmatively denied an opportunity to speak,” the district court was not “misinformed or uninformed as to any the relevant circumstances,” and there was “no claim that the defendant would have had anything at all to say if he had been formally invited to speak.” 368 U.S. at 429, 82 S.Ct. 468. There was, in other words, no prejudice; “all that [wa]s shown [wa]s a failure to comply with the formal requirements of the Rule.” Id. (“Whether § 2255 relief would be available if a violation of Rule 32(a) occurred in the context of other aggravating circumstances is a question we ... do not consider.”).
Similarly, in Timmreck the defendant alleged only a “technical violation” of Rule 11, and did not argue “that he was actually unaware of the special parole term or that, if he had been properly advised by the [district court], he would not have pleaded guilty.” 441 U.S. at 784, 99 S.Ct. 2085. In *1159 other words, the defendant did not assert that he suffered any prejudice from the Rule 11 violation. “As in Hill,” the Supreme Court in Timmreck found it “unnecessary to consider whether § 2255 relief would be available if a violation of Rule 11 occurred in the context of other aggravating circumstances.” Id. at 784-85, 99 S.Ct. 2085.
Not surprisingly, the Supreme Court has explained its holdings in Hill and Timmreck as being based on the lack of prejudice. See Peguero v. United States, 526 U.S. 23, 27-28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999). “Our precedents establish,” the Supreme Court said, “as a general rule ... that a court’s failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief only when the defendant is prejudiced by the court’s error.” Id. at 27, 119 S.Ct. 961 (emphasis added). Here, Mr. Spencer has certainly shown that he was prejudiced by the erroneous career offender designation; his advisory guideline range increased by 81 months as a result of the error. We should heed the Supreme Court’s characterization of its own decisions and not read cases like Hill and Timmreck as barring § 2255 relief on advisory guideline claims no matter what the circumstances. See also Reed v. Farley, 512 U.S. 339, 357, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (Scalia, J., concurring in part and concurring, in the judgment) (“As for [the reservation in] Hill and Timmreck [ ] of the question whether habeas would be available ‘in the context of other aggravating circumstances,’ that seems to me clearly a reference to circumstances that cause additional prejudice to the defendant, thereby elevating the error to a fundamental defect or a denial of rudimentary procedural requirements.... ”).
D
To support its contention that so-called “lawful” sentences — i.e., those not exceeding the statutory maximum — cannot be challenged under § 2255 for advisory guideline errors, the majority relies heavily on United States v. Addonizio, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). That case, however, cannot bear the weight the majority places on it.
The defendant in Addonizio filed a § 2255 motion after a post-sentencing change in the Parole Commission’s policies defeated the sentencing court’s subjective expectation that he “would be actually confined for a period of approximately three and one-half to four years of the ten-year sentence.”' Id. at 183, 99 S.Ct. 2235. The Supreme Court held that the defendant failed to establish a fundamental defect that could provide a basis for a collateral attack pursuant to § 2255. According to the majority, the Supreme Court ruled this way in Addonizio simply because the defendant’s sentence was less than the statutory maximum term that could have been imposed. But there was much more than that to the Supreme Court’s holding. The Court concluded that the defendant’s claim was “based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing [court].” Id. at 187, 99 S.Ct. 2235. As a result, the Court explained, “[t]he claimed error here — that the [court] was incorrect in [its] assumptions about the future course of parole proceedings — d[id] not meet any of the established standards of collateral attack.” Id. at 186, 99 S.Ct. 2235. In sum, “[t]here [was] no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the ‘fundamental’ character that renders the entire proceeding irregular and invalid.” Id. Thus, although the sentence imposed “was and [remained] a lawful one,” id. at 187, 99 S.Ct. 2235, that fact *1160 was not the sole independent basis for the Court’s decision.
Unlike the defendant in Addonizio, Mr. Spencer points to an “objectively ascertainable [legal] error,” and one that I believe is of a “fundamental character.” That error was the incorrect and prejudicial calculation of the advisory Sentencing Guidelines, which the Supreme Court has told us “anchor both the district court’s discretion and the appellate review process[.]” Peugh, 133 S.Ct. at 2087, 133 S.Ct. 2072. Nothing in Addonizio prohibits Mr. Spencer from collaterally challenging his below-the-maximum sentence. See Behrens, 375 U.S. at 165-66, 84 S.Ct. 295.[2]
Ill
Significantly, the Supreme Court and our circuit have held that a federal prisoner sentenced as a career offender may use § 2255 to vacate his sentence where a prior predicate conviction has been set aside post-sentencing, regardless of whether the sentence exceeded the statutory maximum. See, e.g., Johnson v. United States, 544 U.S. 295, 298, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005); Stewart v. United States, 646 F.3d 856, 858-59 (11th Cir.2011). The precursor to cases like Johnson and Stewart is Tucker, 404 U.S. at 448-49, 92 S.Ct. 589, in which the Supreme Court allowed a defendant to vacate his federal sentence on a § 2255 motion because certain prior state convictions, taken into consideration by the district court, had later been set aside due to a violation of the right to counsel.
In a Johnson/Stewart scenario, the federal career offender sentence initially imposed was purportedly “lawful” within the meaning of Addonizio because it was not above the statutory maximum and because the prior state conviction had not been vacated or overturned at the time of the federal sentencing hearing. Nevertheless, we allow a defendant who later gets a prior predicate conviction overturned to return to federal court and use § 2255 to vacate his then lawfully-imposed career offender federal sentence and be resentenced without the (now non-existent) prior conviction. We do this, of course, because otherwise there would be a miscarriage of justice.
The United States conceded during oral argument that the Johnson/Stewart scenario is “not materially different” from the one we confront here. From my perspective, that was a candid, apt, and telling concession. There is no principled reason for allowing § 2255 review of a career offender sentence where a prior conviction has been vacated post-sentencing, while at the same time precluding § 2255 review of a career offender sentence where a prior conviction, due to a retroactive change in Supreme Court precedent, no longer constitutes a predicate offense. Under either scenario, the pertinent prior conviction cannot lawfully be used to establish career offender status, and the sentence imposed constitutes a miscarriage of justice. In my view, Johnson and Stewart compel us to set aside Mr. Spencer’s sentence.[3]
*1161 The majority says that, because the Sentencing Guidelines are advisory, the district court could have imposed the same sentence even without characterizing Mr. Spencer as a career offender. The latter observation is correct, but it is also irrelevant to the cognizability question because the Supreme Court has told us so.
In Tucker, the United States argued against granting § 2255 relief because, given the defendant’s background and other information possessed by the district court, “it [was] highly unlikely that a different sentence would have been imposed even if the [court] had known that two of the [defendant’s] prior convictions were constitutionally invalid.” 404 U.S. at 446, 92 S.Ct. 589. Even though Tucker was decided at a time when district courts had virtually unreviewable discretion to sentence within statutory limits, the Supreme Court rejected this argument, explaining that it was dealing not “with a sentence imposed in the informed discretion of a [district court], but with a sentence founded at least in part upon misinformation of constitutional magnitude.” Id. at 447, 92 S.Ct. 589. And because the district court took the prior (and now-vacated) convictions into account, vacatur was required. Id.
The same, I submit, should happen here. The district court’s sentence was based upon, and took into account, a legally incorrect anchor: a career offender designation which substantially increased Mr. Spencer’s advisory guideline range. The “real question,” in the words of Tucker, is whether Mr. Spencer’s 151-month sentence “might have been different if the sentencing [court] had known [that Mr. Spencer was not a career offender under the Sentencing Guidelines].” Id. at 448, 92 S.Ct. 589 (emphasis added). For me, the answer to that question is an emphatic yes. Although district courts do not presume that the advisory guideline range is reasonable, see Gall, 552 U.S. at 50, 128 S.Ct. 586, they certainly know that within-guidelines sentences -are effectively immune from reversal on appeal — think of them as appellate safe harbors — and can feel comfortable in imposing such sentences. We routinely tell district courts that we ordinarily expect a sentence within the Sentencing Guidelines to be reasonable, see, e.g., United States v. Hunt, 526 F.3d 739, 746 (11th Cir.2008), and it is folly to pretend that such pronouncements do not have an impact on sentencing decisions in the trenches.
In any event, a district court is always free to specify that it would have imposed the same sentence even if its guideline calculations turn out to be incorrect. If it does so, an appellate court can decide on the merits whether the sentence in question, even without the guideline error, is reasonable. See, e.g., United States v. Keene, 470 F.3d 1347, 1348-50 (11th Cir.2006). Even if we engaged in the speculation suggested by the majority, there is no reason to presume that the district court here would have imposed (or will now impose) the same sentence absent the erroneous career offender designation, because it did not say (or suggest) that it would have done so.
*1162 On remand, Mr. Spencer’s corrected guideline range of 70-87 months would provide the anchor for the exercise of the district court’s discretion and for the reasonableness review that would follow on appeal. See Peugh, 133 S.Ct. at 2087. See also Rita v. United States, 551 U.S. 338, 347, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) (holding that appellate courts may presume that a sentence within the Sentencing Guidelines is reasonable). If the district court chose to vary upward in Mr. Spencer’s case, it would have to “consider the extent of the deviation and ensure that the justification [was] sufficiently compelling to support the degree of the variance.” Gall, 552 U.S. at 50, 128 S.Ct. 586. And, “[a]fter settling on the appropriate sentence, [the district court would be required to] adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.” Id. Due to the erroneous career offender designation, Mr. Spencer was stripped of these meaningful safeguards that, “in practice, make the imposition of a non-Guidelines sentence less likely.” Peugh, 133 S.Ct. at 2083-84.[4]
IV
Compounding its error, the majority puts a further gloss on the § 2255 cognizability standard. It holds that where a federal prisoner, sentenced below the statutory maximum, complains of sentencing error but does not prove either actual innocence of his crime or vacatur of a prior conviction, § 2255 is unavailable. This means that Mr. Spencer and defendants like him, who accept guilt but challenge an illegal sentence, can never use § 2255 to obtain relief.
To reach this result, the majority “woodenly applies” habeas cases (such as McQuiggin v. Perkins, — U.S. -, 133 S.Ct. 1924, 1933, 185 L.Ed.2d 1019 (2013), and Murray v. Carrier, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)), which hold only that a showing of actual innocence (a form of “fundamental miscarriage of justice”) can overcome a procedural default or a statute of limitations bar. The majority does so “without any regard to the significant differences between [procedural default and time bars on the one hand] and [the cognizability of a preserved claim in a first filed and timely § 2255 motion on the other], and without regard to the import of its decision.” Codispoti v. Pennsylvania, 418 U.S. 506, 535-36, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974) (Rehnquist, J., dissenting). The Supreme Court has never so much as hinted, much less held, that a showing of actual innocence, or the vacatur of a prior conviction, is a necessary prerequisite for a properly preserved sentencing claim presented in an initial § 2255 proceeding. And that should not come as a surprise, for if the majority were correct, Behrens (with a defendant who did not challenge his guilt and only sought resentencing relief due to a Rule 32(a) error) could not have come out the way that it did.
Mr. Spencer did not procedurally default his claim of sentencing error, and he did *1163 not file his § 2255 motion past the filing deadline. There is no valid reason to saddle Mr. Spencer, who did everything we could ask a defendant to do in terms of preserving a claim, with the burden of proving actual innocence — a safety valve requirement that has been developed for use by those who have forfeited their claims by not presenting them in a timely and proper manner. Even the United States has not asked for the imposition of such a burden.
V
I close with a suggestion that the Supreme Court address the § 2255 cognizability issue and some thoughts about the choice between finality and justice.
A
We decide today’s case by a 5-4 vote. Some of our sister circuits, as explained below, have issued closely divided decisions on the same or similar issue.
Four years ago, a unanimous panel of the Eighth Circuit held that a career offender designation, shown to be incorrect due to intervening Supreme Court precedent, can be challenged under § 2255. See Sun Bear v. United States, 611 F.3d 925, 929-31 (8th Cir.2010). The full Eighth Circuit, in a 6-5 decision, reversed course and ruled that a career offender error is not cognizable under § 2255. See Sun Bear v. United States, 644 F.3d 700, 704-06 (8th Cir.2011) (en banc).
In 2011, a panel of the Seventh Circuit, without dissent, held that an erroneous career offender error is cognizable under § 2255 if the Sentencing Guidelines were mandatory at the time of the error. Two years later, a divided panel of the Seventh Circuit ruled that such error is not cognizable if the Guidelines were merely advisory. Compare Narvaez v. United States, 674 F.3d 621, 627-30 (7th Cir.2011) (3-0 decision), with Hawkins v. United States, 706 F.3d 820, 823-25 (7th Cir.2013) (2-1 decision), as supplemented on denial of rehearing en banc, 724 F.3d 915 (7th Cir. 2013).
More recently, a divided panel of the Fourth Circuit, agreeing with the panel’s decision in this case, held that the incorrect designation of a defendant as a career offender is the type of error that is cognizable under § 2255. See Whiteside v. United States, 748 F.3d 541, 548-55 (4th Cir.2014) (2-1 decision). The full Fourth Circuit, however, vacated that decision and agreed to hear the case en banc. See Whiteside v. United States, 578 Fed.Appx. 218 (4th Cir.2014) (en banc).
In my opinion, it is time for the Supreme Court to address the important § 2255 cognizability question, one which the First Circuit has called “longstanding” and “interesting.” Damon v. United States, 732 F.3d 1, 3, 4 (1st Cir.2013). Much has changed since the Supreme Court first held that claims alleging a violation of the “laws of the United States” are only cognizable on collateral attack if the asserted violation also constitutes a fundamental defect that results in a complete miscarriage of justice. Given the “Court’s historic willingness to overturn or modify its earlier views of the scope of the writ, even where the statutory language authorizing judicial action has remained unchanged,” Wainwright v. Sykes, 433 U.S. 72, 81, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Court may wish to reconsider the standard announced in cases like Hill to give effect to the plain text of § 2255.
In light of the historic uses of the writ of habeas corpus, to some the language of § 2255 may seem too broad. “Yet this defect — if defect it is — is inherent in the statute as written, and its correction must lie with Congress.” Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 499, 105 S.Ct. *1164 3275 (1985). See also Pa. Dep’t of Corr. v. Yeskey, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (“[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.”) (internal quotation marks omitted). As the Supreme Court has told us repeatedly, “when the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.” Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (internal quotation marks omitted).
B
Federal courts, entrusted with the administration of criminal law and procedure, are often faced with a difficult judgment call: choosing between finality and justice. In the words of the Eighth Circuit, “[f]or matters not settled it must be recognized that any decision which allows or refuses collateral attack rests upon a choice between achieving finality and assuring substantial justice[.]” Houser v. United States, 508 F.2d 509, 513 (8th Cir.1974). Admittedly, finality is often the easier value to quantify, as it is viewed in terms of efficiency. Justice; given its focus on notions of fairness, is usually perceived as more difficult to define. That does not mean, however, that we should prefer the former over the latter in the case before us today. See, e.g., Russell, Reluctance to Resentence, 91 N.C.L.Rev. at 139 (“A close examination of the arguments favoring finality reveals that there is considerably less justification for treating sentences as final compared to convictions. Courts have been overstating the interests in finality of sentences, and they should be fixing more sentencing mistakes.”).
The majority asserts that its decision promotes finality in the criminal justice system, and I do not doubt that it does. But finality is not “the central concern of the writ of habeas corpus” — “fundamental fairness is.” Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). My vote here is for justice generally, and for fairness to Mr. Spencer specifically. Refusing to correct a sentencing error that has resulted in an extra 81 months of prison time ignores that § 2255, like the correlative writ of habeas corpus, “is, at its core[,] an equitable remedy.” Schlup v. Delo, 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

. For a chronological summary of how federal criminal procedure has changed since § 2255 was enacted in 1948, see Sarah French Russell, Reluctance to Resentence: Courts, Congress, and Collateral Review, 91 N.C.L.Rev. 79, 90-97 (2012).

. In today’s sentencing regime, a claim similar to the one rejected in Addonizio would be a contention that the district court, in imposing sentence, overestimated the amount of good time credit a defendant would receive from the Bureau of Prisons for a specific term of imprisonment. See generally 18 U.S.C. § 3624(b). Such a claim is far removed from the one presented by Mr. Spencer.

. The rule established in Johnson, I note, is not limited to career offender enhancements. Some circuits have applied Johnson to allow defendants to reopen any federal sentence enhanced by prior convictions that are subsequently vacated, set aside, expunged, or dismissed. See, e.g., United States v. Cox, 83 F.3d 336, 339 (10th Cir.1996) ("Although defendant's sentence was correct at the time of *1161 sentencing, subsequent events suggest that a different sentence now may be appropriate. Because there may be a change in defendant’s criminal history category after his sentencing and direct appeal, the district court should have reopened defendant’s sentence.”); United States v. Doe, 239 F.3d 473, 475 (2d Cir.2001) ("We agree with our sister Circuits and hold that defendants who successfully attack state convictions may seek review of federal sentences that were enhanced on account of such state convictions.”); United States v. Hairston, 754 F.3d 258, 262 (4th Cir.2014) (following Stewart in case where vacated prior conviction had affected defendant’s criminal history score).

. The cognizability of a career offender error under § 2255 should not depend on whether the sentence was imposed under a mandatory or advisory Sentencing Guidelines regime. Even when the Sentencing Guidelines were mandatory, district courts retained discretion to depart downward along the criminal history axis — under U.S.S.G. § 4A1.3 — if they concluded that a career offender designation was over-representative of a defendant's past. See, e.g., United States v. Webb, 139 F.3d 1390, 1395 (11th Cir.1998) ("Consistent with every other circuit to have addressed this issue, we now hold that [U.S.S.G.] § 4A1.3 does authorize the sentencing court to downward depart regardless of a defendant's status as a career offender[.]”) (citing cases).